# 2002 DTA 132

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN, PANEL I**

HERMEYRA RUGELES PEDRAZA
Peticionaria

v.

CHU SHIN HUANG
Recurrido

Núm. KLCE-02-00245

San Juan, Puerto Rico, a 27 de agosto de 2002

Panel integrado por su Presidenta, la Jueza Fiol Matta,
la Jueza Rodríguez de Oronoz y el Juez González Rivera

González Rivera, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Hermeyra Rugeles Pedraza (en adelante señora Rugeles), solicita la revisión y revocación de una resolución emitida el 15 de febrero de 2002 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el dictamen recurrido, el foro de instancia declaró "Con Lugar" una petición de recobro de pensiones alimentarias no satisfechas. En consecuencia, aprobó un plan de pagos propuesto por la parte recurrida, Chu Shin Huang (en adelante señor Shin), a razón de $200.00 dólares mensuales para abonar a una deuda de $40,500.00. El tribunal denegó el pago de intereses, declaró compensada la deuda en la cantidad de $1,200.00 pagados por el recurrido para beneficio de su hija por servicios de ortodoncia, reduciendo así la deuda a $39,300.00.

La parte peticionaria, señora Rugeles, imputa como fundamento de revocación que erró el foro de instancia al determinar que un plan de pagos a base de $200.00 mensuales es razonable para solventar la deuda alimentaria, al denegar el pago de intereses por mora, al darle crédito al testimonio del recurrido y al permitir una compensación de $1,200.00 pagados al ortodoncista por servicios prestados a su hija menor contra la deuda alimentaria. Antes de resolver los planteamientos formulados en el recurso, veamos el trasfondo de los hechos que enmarcan la cuestión planteada.

**I**

El 7 de octubre de 1998, la señora Rugeles interpuso una demanda en la que alegó que se divorció del recurrido, señor Shin, el 7 de junio de 1990 en el Estado de Arizona. En aquel entonces, el Tribunal Superior del Condado de Maricopa, Arizona estableció una pensión alimentaria para los dos hijos menores de edad por la cantidad de $950.00 mensuales. Esta sería administrada por la madre custodia, señora Rugeles.

El alimentante y la peticionaria acordaron el 24 de junio de 1992, cuando aún residían en los Estados Unidos, rebajar la cuantía de la pensión a $500.00. De esa forma las partes reconocieron en el alimentante una baja de sus ingresos. La señora Rugeles alegó que consintió a tal rebaja sólo hasta diciembre de 1992. Así las cosas, el señor Shin continuó pagando una pensión a base de $500.00 mensuales hasta la fecha antes indicada. A partir del 1 de enero de 1993, el alimentante continuó pagando la pensión alimentaria a razón de $500.00 mensuales, aun sabiendo que la señora Rugeles no estaba de acuerdo con dicha cuantía. El 7 de octubre de 1998, la señora Rugeles presentó una demanda contra su ex-esposo para reclamar el atraso acumulado desde que se hizo el acuerdo modificatorio. El mismo comprendía un periodo aproximado de seis (6) años.

El 30 de mayo de 2001, el Tribunal de Primera Instancia dictó una resolución que es hoy final y firme en la que estableció en concepto de deuda alimentaria remota la cantidad de $40,500.00. La misma cubría el periodo comprendido entre el 1 de enero de 1993 hasta el 30 de junio de 2000. Se ordenó al alimentante, señor Shin, someter un plan de pagos razonable para satisfacer dicha deuda. Además, el Tribunal le fijó la cantidad de $600.00 en concepto de honorarios de abogado.

El 20 de junio de 2001, el alimentante propuso pagar $200.00 mensuales adicionales a los $540.00 que fueron fijados el 26 de junio de 2000 como nueva pensión alimentaria. La señora Rugeles no aceptó tal plan, por lo que se celebró la vista evidenciaria sobre la capacidad económica del alimentante que motivó el presente recurso.

Durante la misma, el señor Shin declaró que no posee bienes de fortuna, no posee propiedades, que reside con su actual familia sin pagar renta en el edificio donde opera la corporación para la cual trabaja, que su esposa no trabaja y que la única fuente de ingreso del hogar es su empleo en la corporación de su hermano, Chen Shin Huang. Tampoco posee automóvil propio.

El nombre de la corporación es Suimport International, la cual se dedica a la venta de piezas de motoras. Declaró, además, que en la corporación realiza labores de mantenimiento y ayuda con órdenes de compra. Surge de la vista evidenciaria que el señor Shin se acogió al Capítulo 7 de la Ley Federal de Quiebras allá para el año 1989, mientras residía en Arizona. Mediante un informe, la Examinadora de Pensiones Alimenticias estableció el ingreso del señor Shin en $1,040.00 mensuales.

Por su parte, la señora Rugeles aportó la siguiente prueba:

*"1. Copia de la Planilla de Contribución sobre Ingresos del recurrido para el año 1992, en la que se hacía constar que como vendedor, para ese año generó $11,000.00 en ingresos atribuibles a comisiones.*

*2. Copia de la Planilla de Contribución sobre Ingresos del recurrido para el año 1993, en la que informó al Departamento de Hacienda que se dedicaba al negocio de ventas y que recibió de la Corporación Suimport por concepto de servicios prestados la cantidad de $9,100.00 más $6,505.00 por concepto de comisiones, para un total de $15,605.00*

*3. Copia de la Planilla de Contribución sobre Ingreso del recurrido para el año 1994, en el que hacía constar haber recibido la cantidad de $9,100.00 en concepto de salarios, más $8,500.00 por concepto de comisiones para un total de $17,600.00.*

*4. Copia de la Planilla de Contribución sobre Ingresos del recurrido para el año 1995, en el que hacía constar haber recibido $9,100.00 por concepto de salarios y $8,166.00 por concepto de comisiones para un total de $17,266.00.*

*5. Copia de la Planilla de Contribución sobre Ingresos del recurrido para el año 1996, en el que hacía constar haber recibido salarios por $8,567.00 e ingresos misceláneos de $6,000.00 por concepto de arrendamiento de computadoras para un total de $14,567.00.*

*6. Copia de la Planilla de Contribución sobre Ingresos del recurrido para el año 1997, en el que hacía constar haber recibido $12,000.00 por concepto de salarios y $6,000.00 por concepto de comisiones para un total de $18,000.00.*

*7. Copia de la Planilla de Contribución sobre Ingresos del recurrido para el año 1998, en el que hacía constar haber recibido $13,000.00 por concepto de salarios y $7,200.00 por concepto de comisiones para un total de $20,200.00.*

*8. En las planillas de Contribución sobre Ingresos para los años 1996, 1997 y 1998, el señor Shin informó que su ocupación era "gerente".*

En cuanto a la Corporación Suimport International, la señora Rugeles aportó prueba para establecer lo siguiente:

*"1. En los informes corporativos de Suimport International que fueron jurados y suscritos por el recurrido ante notario público en los años 1993, 1994 y 1997, éste declara ser presidente, secretario y tesorero a tiempo indefinido. Figurando, además, como agente residente e identificándose como comerciante y propietario.*

*2. El hermano del recurrido, señor Chen Shin Huang, no figuraba como agente residente o miembro de la Junta de Directores de dicha corporación."*

De acuerdo a todo lo anterior, el foro recurrido resolvió aprobar el plan de pago de $200.00 mensuales,

efectivo el 1 de marzo de 2002 hasta el saldo total de la deuda. El tribunal negó la solicitud de fijar intereses por mora por no haberse solicitado conjuntamente con la solicitud para establecer la cuantía objeto de la resolución dictada el 30 de mayo de 2001. Procedió entonces el foro recurrido a acreditar la cantidad de $1,200.00 pagado por el recurrido en el tratamiento de ortodoncia de su hija menor de edad, por lo que la deuda fue rebajada a $39,300.00.

## II

Cuando la reclamación de alimentos se refiere a deudas remotas como en el caso de autos, es deber del tribunal examinar la capacidad económica del alimentante y que no existe necesidad inmediata de los menores que se deba atender con la deuda que se reclama. El juez deberá aprobar un plan de pagos que le permita al deudor ponerse al día sin necesidad de advenir a la ruina económica. *Quiñones v. Jiménez Conde,* 117 D.P.R. 1 (1986). El tribunal deberá diseñar un plan que sea económicamente viable para el alimentante y que satisfaga las necesidades de los menores. El criterio rector en estos casos es la razonabilidad.

Al determinar la capacidad económica de cada alimentante, es preciso tomar en cuenta todos los ingresos devengados por éste, hasta los que no aparezcan informados en la Planilla de Información Personal. *Rodríguez Rosado v. Zayas Martínez,* 133 D.P.R. 406 (1993). El Tribunal de Primera Instancia no está limitado a considerar sólo la evidencia testifical o documental sobre los ingresos. Además, puede considerar aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de las propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingresos. *López v. Rodríguez,* 121 D.P.R. 23 (1988). El Tribunal Supremo incluso ha impuesto al foro de instancia la obligación de tomar en cuenta en estos casos de alimentos la realidad de la economía subterránea que prevalece en Puerto Rico. Véase *López v. Rodríguez, supra.*

El Tribunal Supremo ha hecho referencia a que en el país muchos profesionales y personas con negocios propios incurren en la práctica de declarar fiscalmente sólo parte de los ingresos reales que tiene. Se indicó que esa realidad debe tomarse en cuenta en reclamaciones sobre alimentos. *López v. Rodríguez, supra.* Por ello, el Tribunal Supremo expresamente dispuso que el Tribunal de Primera Instancia debiera tomar en cuenta toda la prueba desfilada, para inferir que el alimentante cuenta con medios suficientes para cumplir con sus obligaciones alimentarias. *López v. Rodríguez, supra.*

Precisamente por lo fundamental que es la obligación de alimentar a los hijos, los tribunales en casos como el de autos, tiene la responsabilidad ineludible de escudriñar la prueba que tiene ante sí, a fin de determinar la verdadera situación económica del alimentante. Particularmente en casos en los cuales el alimentante alega que no tiene ingresos suficientes o que gana menos que antes, el tribunal debe hacer todo lo posible por verificar que lo alegado por el alimentante no sea un intento por evadir su responsabilidad alimentaria.

Más aún, los tribunales, al tomar en cuenta la prueba en los casos en que se alega disminución de ingresos, tienen la obligación de distinguir entre las situaciones en que la reducción ha sido deliberada o se debe a la falta de diligencia o a la dejadez del alimentante. Lo esencial es que el tribunal verifique que la reducción en los ingresos del alimentante no sea un artificio para que éste incumpla con su obligación de alimentar a sus hijos adecuadamente. El foro de instancia debe tomar en cuenta el estilo de vida del alimentante, sus propiedades, su profesión y aptitud para generar ingresos y otros factores similares para hacerle cumplir con sus obligaciones, más allá de lo que éste alegue o intente probar sobre el particular. Con arreglo incluso a la prueba circunstancial que se le someta, el tribunal puede imponer una obligación alimentaria si puede inferir de esa prueba que el alimentante tiene a su alcance medios suficientes para cumplir con sus obligaciones. *López v. Rodríguez, supra.*

Es preciso, pues, destacar en este momento que en cuanto a la prueba testifical está firmemente establecido en nuestro ordenamiento jurídico que los tribunales apelativos, en ausencia de pasión, prejuicio o parcialidad o error manifiesto en la apreciación de la prueba, no deben intervenir con las determinaciones de hechos, la

apreciación de prueba y las adjudicaciones de credibilidad realizada por los tribunales de instancia. *Trinidad García v. Chaade*, **2001 J.T.S. 10**, resuelto el 18 de enero de 2001; *Blás v. Hospital de la Guadalupe*, 146 D.P.R. 267 (1998); *Flores v. Soc. de Gananciales*, 146 D.P.R. 45 (1998); *Mercado, Quilichini v. U.C.P.R.,* 143 D.P.R. 610 (1997); *López v. ITT Intermedia, Inc.,* 142 D.P.R. 857 (1997).

Por otra parte, es principio ampliamente reconocido que este tribunal está en igual posición que el tribunal apelado para evaluar la apreciación de prueba documental y pericial, y los tribunales apelativos sólo intervendrán con las determinaciones de hechos y adjudicación de credibilidad que hizo el Tribunal de Primera Instancia cuando se den circunstancias extraordinarias. *López Vicil v. ITT Intermedia Inc., supra*. Un análisis integral del caso de auto produce insatisfacción o intranquilidad de conciencia con respecto a las determinaciones de hechos del foro de instancia, de tal magnitud que estremece nuestro sentido básico de justicia. *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986).

Aplicados los precedentes jurídicos expuestos al caso que nos ocupa, se desprende claramente de lo anterior que en este caso está justificado intervenir con la apreciación de la prueba del Tribunal de Primera Instancia. Las conclusiones del foro recurrido de acuerdo al resultado al que llegó luego de desfilada la prueba sobre la capacidad económica del alimentante no incorporó, ni aplicó la normativa sobre el particular antes reseñado. La parte peticionaria logró establecer que el foro de instancia incidió en un error manifiesto al apreciar la prueba.

En el presente caso, el recurrido, señor Shin, declaró bajo juramento que no posee bienes de fortuna, ni propiedades, que su actual esposa no genera ingresos, que residen en el mismo edificio donde opera la corporación Suimport y que se desempeña como empleado de mantenimiento en dicha corporación que es propiedad su hermano.

Por su parte, la peticionaria, señora Rugeles, logró desmerecer la prueba del recurrido al presentar evidencia documental fehaciente incontrovertida para establecer que: (1) en el año 1992, el recurrido recibió por concepto de comisiones $11,000.00; (2) en el 1993, recibió por concepto de servicios prestados $9,100.00 y $6,505.00 por comisiones; (3) en el año 1994, recibió $9,100.00 por concepto de salarios y $8,500.00 por comisiones; (4) en el año 1995, recibió $9,100.00 por concepto de salarios y $8,166.00 por comisiones; (5) en el año 1996, recibió salarios por $8,567.00 e ingresos misceláneos por $6,000.00; (6) en el año 1997, recibió salarios por $12,000.00 e ingresos misceláneos y $6,000.00 por concepto de comisiones, y (7) en el 1998, devengó salarios por $13,000.00 e ingresos misceláneos por $7,200.00.

En la Planilla de Contribución sobre Ingresos del año 1993 informó que se dedicaba al negocio de ventas. En las planillas correspondientes a los años 1996, 1997 y 1998, informó que su ocupación era gerente.

En cuanto a la Corporación Suimport International, la señora Rugeles presentó las planillas corporativas correspondientes a los años 1993, 1994 y 1997, que fueron juradas y suscritas ante notario público por el recurrido. En las mismas, éste manifestó bajo juramento ser presidente, secretario y tesorero a tiempo indefinido, figurando además, como agente residente e identificándose como comerciante y propietario.

De los anteriores hechos probados, un hombre razonable, fundándose en la razón y la experiencia, puede lógicamente inferir que el señor Chu Shin Huang posee medios económicos suficientes para asumir un mejor plan ·de pago al que propuso y que fue aceptado. La evidencia documental anterior, así como la exposición narrativa de la prueba que consta en autos, así lo demuestran.

## III

Veamos si hubo error por parte del Tribunal de Primera Instancia al negar conceder el pago de los intereses por mora. En *Martínez v. Rivera Hernández*, 116 D.P.R. 164 (1985), el Tribunal Supremo de Puerto Rico resolvió que las sentencias y resoluciones en casos de pensiones de alimentos devengan intereses legales por

mora. Es una consecuencia natural de la obligación de dinero. Estos se computan desde el momento en que se dictó la sentencia, o si es de mes a mes desde que venció o debió ser satisfecha. El legislador entendió que la norma de referencia era conveniente incorporarla al Artículo 147 del Código Civil, 31 L.P.R.A. sec. 566. De tal modo, mediante la Ley Núm. 131 aprobada el 17 de diciembre de 1993, se enmendó la referida sección del Código Civil para que disponga en lo pertinente de la siguiente manera:

*"Los alimentos concedidos comenzarán a devengar intereses legales por mora, desde que venció o debió ser satisfecha la obligación."*

Vistas las claras disposiciones de ley y jurisprudencia aplicables al caso que nos ocupa, concluimos que el foro de instancia incidió al denegar el pago de interés moratorio sobre la sentencia objeto de este recurso, desde que se dictó la resolución del 30 de mayo de 2001.

## IV

Por último, atendamos el reclamo de la peticionaria señora Rugeles al cuestionar el dictamen del foro de instancia que concedió un crédito de $1,200.00 al recurrido por concepto de servicios de ortodoncia prestados a su hija menor contra la deuda alimentaria.

Se trata aquí del cobro de pensiones alimentarias por *"deudas remotas"* que asciende a $40,500.00, para dos hijos menores procreados en el matrimonio entre las partes. El padre reclama que debe dársele crédito contra la pensión alimenticia por el gasto incurrido de $1,200.00 por servicios de ortodoncia prestados para beneficio de su hija.

Comencemos señalando que el gasto por servicios de ortodoncia se considera como uno de naturaleza estético y por su naturaleza uno extraordinario y no existe base en los autos para concluir lo contrario. *Guadalupe Viera v. Morell*, 115 D.P.R. 4 (1983). Ello es así, ya que la pensión alimentaria ha de satisfacerse por la cantidad dispuesta por el tribunal sin descuentos hechos a voluntad del alimentante. Según estableció el Tribunal Supremo de Puerto Rico en el caso de *Guadalupe Viera v. Morell, supra,* el gasto extraordinario que en tal caso pueda incurrir el alimentante podría ser objeto de consideración por el tribunal para un reajuste de la pensión, si es que dicho gasto ha afectado su capacidad económica para proveer la pensión. Cada caso deberá atenderse conforme a sus particulares hechos y circunstancias.

Como vemos, la obligación de proveer alimentos a los hijos es de ambos padres. Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y **asistencia médica,** según la posición social de la familia. Artículo 142 Código Civil de Puerto Rico, 31 L.P.R.A. sec. 561.

La pensión alimenticia ha de satisfacerse en la cantidad dispuesta por el tribunal, sin descuento hechos a voluntad del alimentante. Sólo cuando haya mediado acuerdo previo y la autorización del monto de la pensión aquellas cantidades de dinero que guste en beneficio de los menores. *Otero Fernández v. Alguacil,* 116 D.P.R. 733 (1985).

Advertimos que en el caso de autos, el padre alimentante, señor Shin, trabaja y produce suficientes ingresos para sostener y educar a sus hijos. Los pagos realizados por él son de naturaleza extraordinaria producto de su propia voluntad, por lo que no deben ser descontados y mucho menos imputados a la pensión alimentaria que le fuera impuesta. Esos podrían constituir un crédito contra la madre de la menor. Ambos padres deben compartir esos gastos extraordinarios en proporción a sus respectivos medios de fortunas.

## V

Habiendo el foro de instancia incurrdo en los errores que le imputa la parte peticionaria, señora Rugeles, y por los fundamentos expuestos, dictaminamos que es procedente expedir el auto de *certiorari* solicitado para

revocar la resolución recurrida dictada el 15 de febrero de 2002. Se ordena la devolución de este caso al Tribunal de Primera Instancia para que realice los procedimientos que sean necesarios para establecer, a la luz de la prueba aportada durante la vista del 18 de diciembre de 2001, un plan de pagos razonable para solventar los $40,500.00 decretados por la resolución dictada el 30 de mayo de 2001, y conceda los intereses por mora acumulados desde que se dictó la anterior resolución y efectúe los demás pronunciamientos que en derecho correspondan.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General