WILMA QUIÑONES, demandante y recurrida, *v.* BALTAZAR JI-MÉNEZ CONDE, demandado y peticionario.

*Número:* CE-85-829      *Resuelto:* 3 de febrero de 1986

2

*Vicente Sanabria Acevedo*, abogado del peticionario.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El presente caso constituye un ejemplo más de la manera inaceptable en que se llevan a efecto los procedimientos post-

divorcio relativos a las pensiones alimenticias para los hijos menores de edad procreados durante el matrimonio en un considerable número de casos ante los tribunales de instancia. Véanse: *Ex Parte Valencia*, 116 D.P.R. 909 (1986) y *Martínez* v. *Rivera Hernández*, 116 D.P.R. 164 (1985).

Habiéndose divorciado las partes mediante sentencia a esos efectos de fecha 20 de marzo de 1978 emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, el aquí peticionario fue condenado a pasar una pensión alimenticia para sus hijos de $2,300 mensuales, la cual fue rebajada, por estipulación de las partes, a la suma de $1,500 mensuales mediante resolución emitida por el foro de instancia con fecha de 28 de noviembre de 1978. Un examen minucioso de los autos originales del caso —los cuales constan de dos (2) voluminosos expedientes— revela la observancia por ambas partes de un complicado, y ciertamente inexplicable, patrón de conducta, ello desafortunadamente en perjuicio de los menores procreados durante el matrimonio.

Por un lado la incomprensible conducta del padre, atrasándose innecesariamente en los pagos que voluntariamente había acordado realizar; por otro lado, una actitud poco flexible y de hostigamiento por parte de la madre. Situación que desemboca en una interminable radicación de escritos ante el foro de instancia por parte de los abogados de éstos; conducta profesional que no redunda ni en beneficio de las partes y sus hijos ni en una mejor y más eficiente administración de la justicia. Por último, una atención un tanto laxa por parte del foro de instancia —posiblemente debido al gran cúmulo de casos que está obligado a atender— que desafortunadamente tiene el efecto indeseable de promover y fomentar aún más la hostilidad obviamente existente entre los ex cónyuges.

Consecuencia de todo lo anteriormente expresado: un tranque en la comunicación que siempre debe existir entre las partes en esta clase de situaciones que llevan al padre a tomar la asombrosa decisión, en detrimento del bienestar de sus

hijos, de descontinuar totalmente el pago de las pensiones alimenticias por un período aproximado de dos años. Resultado: una deuda por concepto de pensión alimenticia ascendente a la elevada suma de $37,750 que motivó que el tribunal de instancia finalmente ordenara el arresto y encarcelamiento del peticionario, el cual se efectuó el día 8 de agosto de 1985, fecha desde la cual éste se encuentra recluido en una institución penal en Puerto Rico.

El foro de instancia, en un esfuerzo por resolver el inevitable *impasse* surgido, emite una resolución con fecha de 6 de diciembre de 1985 mediante la cual le impone al aquí peticionario, como condición para ordenar su excarcelación, el cumplimiento de tres (3) requisitos, a saber:

1) Depositar en la Secretaría de este Tribunal mediante cheque certificado o giro bancario la suma de $8,000.00,

2) Garantizar mediante fianza personal de por lo menos dos personas que sean aceptadas por la parte demandante para garantizar el fiel cumplimiento de la deuda de pensiones alimenticias,

3) Someter un plan de pago para solventar la deuda de pensiones atrasadas y sus intereses y que dicho plan sea uno razonable.

Inconforme, el peticionario ha acudido ante este Tribunal mediante la radicación del correspondiente recurso de *certiorari*. En el mismo, cuestiona el requisito de "afianzamiento" de la deuda. Indica, por el contrario, que está en disposición de satisfacer preliminarmente la suma de $6,000 y "entrar en un plan de pagos dentro de sus limitaciones". Cuestiona, por último, el hecho de que el foro de instancia no haya hecho pronunciamiento alguno sobre el estar exento de pagar la pensión alimenticia durante el período que ha estado recluido en prisión.

Resolvemos, sin ulterior trámite, al amparo de la Regla 50 de nuestro Reglamento en vista de la naturaleza y hechos particulares del caso.

# I

El caso de autos es un vivo ejemplo de la situación inaceptable imperante hoy día en las salas de relaciones de familia del tribunal de primera instancia de nuestro país. Los hijos menores de edad de padres divorciados o separados que se encuentran enfrascados en esta clase de agria e improductiva contienda son testigos mudos e indefensos de la misma; seres que en última instancia son los únicos que resultan perjudicados. Ésta no constituye la primera ocasión en que este Tribunal ha manifestado su profunda preocupación al respecto. En fecha tan reciente como el 6 de marzo de 1985, en *Martínez v. Rivera Hernández*, ante págs. 170–171 expresamos:

> . . . *nos preocupa la lentitud en el procesamiento judicial de casos de pensiones alimenticias. Es alarmante.* Los estudios recientes así lo corroboran. El notable esfuerzo de los jueces y demás funcionarios en remediarlos ha sido infructuoso. *Parte del complejo problema radica en las actitudes de los protagonistas, abogados y jueces.* Pero también en la naturaleza del asunto. Un número sustancial de los decretos de divorcio contienen imperativamente dictámenes sobre pensiones alimenticias. Su ejecución posterior genera a corto y largo plazo un sinnúmero de incidentes relativos, entre otros, a su incumplimiento, aumento o disminución de la pensión. *Apuntes sobre procedimientos judiciales en torno a la familia,* Secretariado de la Conferencia Judicial, págs. 27–29. El método clásico de requerir una mostración de causa al alimentante moroso, con la consabida contratación de abogado por la parte promovente, radicación de documentos, notificación y citación, es costoso, complejo y enrevesado. Atenta contra los intereses de los menores de edad —verdaderos sujetos tutelados del derecho— al propiciar tardanzas indebidas. "[E]l bienestar y la salud física y emocional de los menores se ve comprometida por la lentitud que crea una maquinaria judicial congestionada." *Apuntes sobre procedimientos judiciales en torno a la familia,* supra, pág. 29. La situación reclama urgente intervención del Poder Legislativo. *Entretanto hacemos un llamado a los tribuna-*

*les de justicia del país para que con creatividad e imagina-*
*ción intenten solucionar con mayor prontitud y prioridad*
*estas contiendas.* (Énfasis suplido.)

■ Estamos conscientes de lo recargados de trabajo que se encuentran los señores jueces de instancia que presiden las salas de relaciones de familia. Ello no obstante —y mientras la situación presupuestaria de la rama judicial, y del país en general, no permita un aumento razonable en el personal asignado para atender dichas salas— los incumbentes deben estar prestos a realizar esfuerzos extraordinarios con el propósito de lograr un alivio en la situación imperante; la misma, y el futuro de esos menores de edad, así lo exige y requiere. Aquel que esté dispuesto a enfrentarse a la situación con dedicación y sacrificio definitivamente habrá demostrado que está capacitado para desempeñar tan delicada labor.

■ La solución del problema, como expresáramos en *Martínez* v. *Rivera Hernández*, ante, requiere que se actúe con "creatividad e imaginación . . .". Los tribunales de instancia deberán implantar a la brevedad posible aquellos procedimientos o sistemas que hagan viable el darle "seguimiento automático" a los casos; esto es, mecanismos que impidan situaciones como la ocurrida en el presente caso: una suma de dinero adeudada de tal magnitud que difícilmente podrá ser recobrada en su totalidad, con el consabido perjuicio a los menores envueltos. Ello requiere que los jueces de instancia realicen aquellos ajustes necesarios en sus calendarios y horario de trabajo que les permitan disponer en una forma más rápida y eficiente de los procedimientos y asuntos relativos a las pensiones alimenticias de forma tal que cuando actúen sobre los mismos no se encuentren frente a una situación insoluble. *Ex Parte Valencia*, ante. La situación es tan grave que se requiere que se le dé a la misma la mayor prioridad.

■ No se debe perder de vista que estos casos, a diferencia de los demás, tienen por su naturaleza una "vida"

larga que requiere que las partes estén en contacto la una con la otra por un tiempo prolongado. En adición, debe mantenerse presente que precisamente debido a la naturaleza de la relación que sirve de origen al caso, las sensibilidades y sentimientos de las partes pueden ser heridas con relativa facilidad. Por ello, no obstante estar conscientes de que posiblemente no hay forma de evitar la existencia de cierta animosidad y fricción entre dos seres humanos que, luego de haber convivido por un número de años, deciden tomar caminos distintos, advertimos que como parte del poder inherente de reglamentar la profesión que tiene este Tribunal, *In re Díaz Alonso, Jr.*, 115 D.P.R. 755 (1984), no estamos en disposición de tolerar conducta por parte de abogados que, en lugar de propiciar la solución del problema, fomente dicha animosidad. No hay duda de que el abogado puede ser fogoso y vehemente en la defensa de los intereses de su cliente; no hay lugar, sin embargo, en nuestra profesión para aquel que promueve la hostilidad, la animosidad y las alegaciones falsas, innecesarias y viciosas en los procedimientos ante nuestros tribunales de justicia.

Le recordamos a la clase togada en general que los Cánones de Ética que regulan la profesión legal en Puerto Rico contienen disposiciones que claramente establecen que existe o debe existir una frontera entre la diligencia y responsabilidad que le debe todo abogado a los casos que le han sido encomendados, y las pasiones, rencillas y rencores que puedan motivar a su cliente. Les está vedado a los abogados, en síntesis, convertirse en "instrumentos" de estos últimos. [1]

---

[1] En lo pertinente, el Canon 8 establece que el "abogado no debe permitir que sus clientes, en el trámite de los asuntos que crean la relación de abogado y cliente, incurran en conducta que sería impropia del abogado si él la llevase a cabo personalmente"; el Canon 15 a los efectos de que un abogado no "debe actuar inspirado por la animosidad ni por los prejuicios de su cliente ni debe permitir que éste dirija el caso ni que se convierta en el dueño de la conciencia del abogado"; el Canon 17 que postula que el "abo-

■ Los señores jueces de instancia deberán velar por que dichos cánones sean observados y reportarán la violación de los mismos de manera que este Tribunal pueda tomar la acción apropiada contra aquellos abogados que así actúen.

## II

Un somero examen de los hechos ante nuestra consideración es suficiente para concluir que la encarcelación que por desacato decretara en el presente caso el tribunal de instancia estuvo más que justificada; de hecho, la misma podría ser criticada por tardía. Los autos originales denotan una actitud de contumacia por parte del peticionario que no permitían otra alternativa.

■ La acción del foro de instancia de requerir un pago inicial y la garantización de la restante parte de la suma adeudada "mediante fianza personal de por lo menos dos personas" nos parece ser precisamente la actuación "creativa e imaginativa" a la que nos referíamos en el caso de *Martínez* v. *Rivera Hernández,* ante. Ciertamente no es un requisito ilegal. Sabido es que las sumas de dinero adeudadas por concepto de pensiones alimenticias ya devengadas pueden ser objeto de una acción ordinaria e independiente de cobro de dinero. *Valdés* v. *Hastrup,* 64 D.P.R. 595 (1945). La actuación

gado debe negarse a representar a un cliente en un caso civil cuando estuviere convencido de que se pretende por medio del pleito molestar o perjudicar a la parte contraria, haciéndole víctima de opresión o daño"; el Canon 18 a los efectos de que el deber que tiene un abogado "de desempeñarse en forma capaz y diligente no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente"; el Canon 26 que califica como altamente impropio el establecer "pleitos viciosos, instigar falsas defensas sin que pueda el abogado justificar dichos actos con el pretexto de que al actuar así, lo hizo siguiendo las instrucciones de su cliente"; y por último, el Canon 29 que señala que cualquier "rencor que exista entre los clientes no debe afectar la conducta de los abogados entre sí ni las relaciones hacia el litigante contrario".

del foro de instancia promueve y resulta cónsona con el principio de economía procesal. La misma intenta balancear dos intereses en pugna: la libertad del peticionario, quien inclusive no tiene derecho per se a que se le brinde un plan de pago, con la garantía del pago de las pensiones en beneficio de los menores de edad.

Ahora bien, no parece ni propio ni conveniente dejar al arbitrio de la parte recurrida la aprobación o aceptación de la garantía o fianza que ofrezca el peticionario. Esa función —al igual que la de aprobar el plan de pago— debe siempre corresponder al tribunal. En segundo lugar, la oferta del peticionario de pagar inmediatamente la suma de $6,000, en lugar de los $8,000 requeridos por el tribunal de instancia, nos parece razonable dados los hechos particulares del caso.

Por último, en cuanto al planteamiento del peticionario a los efectos de que debe estar exento de la obligación de pagar la pensión durante el tiempo que ha permanecido encarcelado, somos del criterio que el mismo es improcedente. En primer lugar, el peticionario se encuentra privado de su libertad debido a la decisión que voluntariamente tomó al desacatar las órdenes del tribunal; esto es, su encarcelación ha sido autoinfligida. En segundo lugar, dicha exoneración representaría penalizar a la parte inocente del incumplimiento por el hecho de haber reclamado aquello a lo que en justicia tiene derecho. En tercer lugar, somos de la opinión que el así hacerlo tendría el efecto indeseable de fomentar el incumplimiento.

Por las razones antes expresadas, *se expide el auto solicitado y se dicta sentencia modificatoria de la resolución de fecha 6 de diciembre de 1985 emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, en la forma arriba indicada, y así modificada se confirma la misma.*

El Juez Presidente Señor Pons y el Juez Asociado Señor Ortiz no intervinieron.