EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Carmelo Rodríguez Feliciano | 2005 TSPR 130 <br><br> 165 DPR \_\_\_\_ |

Número del Caso: CP-1997-7

Fecha: 14 de septiembre de 2005

 Abogados del Querellado:

                    Lcdo. Vicente Ortiz Colón
                    Lcdo. Marco Rosado Conde
                    Lcdo. Héctor Alejandro Lugo Quiñones
                    Lcdo. Manuel Rodríguez Orellana

Oficina del Procurador General:

                    Lcda. Edna Evelyn Rodríguez Benítez
                    Procuradora General Auxiliar

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carmelo Rodríguez Feliciano                CP-1997-7

PER CURIAM

San Juan, Puerto Rico, a 14 de septiembre de 2005.

El licenciado Carmelo Rodríguez Feliciano fue admitido al ejercicio de la abogacía el 25 de enero de 1985 y al ejercicio del notariado el 18 de marzo de ese mismo año. Fue presentada contra el referido abogado el 14 de mayo de 1994 una queja por la señora Myrna Y. López Peña, abogada de profesión.

La señora Myrna Y. López Peña contrajo nupcias con el señor Elías Arguello García en dos ocasiones. La primera vez el 25 de diciembre de 1975 y la segunda el 11 de septiembre de 1979. Concibieron una hija durante su primer matrimonio, quien nació el 28

de junio de 1976, fecha en que fue dictada la sentencia de divorcio por el Tribunal de Primera Instancia que disolvió el primer vínculo matrimonial. El 27 de junio de 1980 fue dictada sentencia por el mismo tribunal, disolviendo el segundo vínculo matrimonial.

El 18 de agosto de 1992 las partes estipularon la suma de cuatrocientos cincuenta dólares ($450) por concepto de pensión alimenticia provisional para su única hija menor de edad, de nombre Ana Haydeé Arguello López. Se estipuló, además, que para el mes de mayo de cada año el señor Arguello García proveería espejuelos o lentes de contacto a su hija, según fuere necesario. El señor Arguello se comprometió a hacer gestiones, a partir de junio de 1993, para proporcionarle a su hija un plan médico, y a depositar la suma de cincuenta dólares ($50) adicionales a la pensión para aportar al plan médico que pagaba la señora López, retroactivo al 1 de julio de 1992.

El 21 de abril de 1992 la licenciada López Peña reclamó al señor Arguello García ante el Tribunal de Primera Instancia la pensión vencida de la hija menor de edad de ambos y no pagada, durante el periodo comprendido entre el 15 de noviembre de 1976 y el 11 de septiembre de 1979, tiempo entre el primer y segundo matrimonio y en el que ambos mantuvieron el status de solteros por divorcio. El Tribunal de Primera Instancia dictaminó el 22 de junio de 1993 que existía una deuda por concepto de pensiones alimenticias no satisfechas por el señor Arguello García ascendente a la suma

de diez mil diez dólares ($10,010), más intereses legales sobre dicha suma.  Le concedió un término al señor Arguello García para someter un plan de pago que le permitiera poner al día lo adeudado.

El Tribunal de Primera Instancia señaló una vista para el 1 de febrero de 1993 para dilucidar una petición de la licenciada López Peña a los efectos de que la deuda del señor Arguello García por concepto de pensión alimenticia no pagada fuere satisfecha por la sociedad legal de gananciales compuesta por el señor Arguello García y su nueva esposa señora Isaura Santiago Colón, quienes habían contraído matrimonio el 23 de diciembre de 1981.  A esa vista compareció el licenciado Carmelo Rodríguez Feliciano e informó al tribunal que representaba a la señora Isaura Santiago Colón. Planteó que su cliente y el señor Arguello García se habían divorciado por mutuo consentimiento el 15 de enero de 1993.  Surge de la petición de divorcio de los esposos Arguello-Santiago, presentada el 12 de enero de 1993, en la que la señora Santiago Colón compareció por derecho propio y el señor Arguello García estuvo representado por el licenciado Rodríguez Feliciano, que todos los bienes muebles e inmuebles adquiridos, durante el referido matrimonio fueron traspasados por el señor Arguello García a la señora Santiago Colón.  En consideración a que el señor Arguello García se encontraba desempleado la señora Santiago Colón le permitió continuar residiendo en la planta baja de la residencia en la que habían habitado juntos, por un período de tres (3)

meses, a partir de la fecha del divorcio. El señor Arguello García se comprometió a pagar una pensión alimenticia de seiscientos dólares ($600) mensuales para beneficio de los tres (3) hijos menores de edad concebidos durante ese matrimonio.

En el desglose de deudas gananciales expuesto en la referida petición de divorcio no se hizo mención de la deuda del señor Arguello García por la suma de diez mil diez dólares ($10,010), por concepto de pensión alimenticia de su hija Ana Haydeé Arguello López, previamente determinada su existencia por el Tribunal de Primera Instancia.

La licenciada López Peña, por sí y en representación de su hija menor de edad, solicitó intervenir en el procedimiento de divorcio entre el señor Arguello García y la señora Santiago Colón. El licenciado Rodríguez Feliciano, en representación de la señora Santiago Colón, se opuso por escrito a tal solicitud. En dicho escrito el licenciado Rodríguez Feliciano le imputó a la licenciada López Peña el tratar de involucrar a su cliente, señora Santiago Colón, en pleitos frívolos e insustanciales con el propósito de causarle malestar. Arguyó falta de legitimación activa de la licenciada López Peña y su hija para intervenir en el referido proceso de divorcio. La solicitud de intervención fue declarada no ha lugar por el Tribunal de Primera Instancia. Alegó que al momento de la presentación de la referida petición de divorcio por mutuo consentimiento, la pensión de la hija de la licenciada López Peña y el señor

Arguello García estaba al día.  Desde ese momento se inició un patrón de conducta por parte del licenciado Rodríguez Feliciano que fomentó la animosidad entre las partes en lugar de propiciar la paz entre ellas, la solución del problema y la controversia entre las partes.

El 10 de agosto de 1993, el Tribunal de Primera Instancia aceptó la renuncia  del licenciado Andrés Montañéz  Coss como abogado del señor  Arguello García, quien lo había  estado representando en las controversias  ante ese tribunal con la licenciada López Peña y la hija de ambos, y el 17 de septiembre de 1993, el licenciado Rodríguez Feliciano asumió su representación legal en esos procedimientos. Posteriormente, el licenciado Rodríguez Feliciano expuso la precaria situación económica en la que su cliente, el señor Arguello García se encontraba y solicitó que se le permitiera pagar la deuda de diez mil diez dólares ($10,010), más los intereses devengados, mediante un plan de pago.  En esta ocasión aceptó la existencia de tal deuda.

Se incoaron varios pleitos por la licenciada López Peña y su hija Ana M. Arguello López contra el señor Arguello García y la señora Santiago Colón.  Estos últimos  incoaron acción de daños y perjuicios mediante reconvención contra la licenciada López Peña  y su hija por haber presentado una acción en su contra frívola y sin causa, como parte de un patrón de conducta de hostigamiento, de molestar y hacerle la vida imposible a los demandados.  Durante el curso de esos procedimientos, el querellado hizo referencia a conducta

hostil, y a un patrón de hostigamiento de la querellante, quien es abogada, contra sus clientes. Realizó, por escrito, varias expresiones contra la querellante y su hija que ésta entendió como lesivas a su persona y violatorias a los Cánones de Ética Profesional.

El Procurador General después de investigar la queja y rendir un informe a este Tribunal sobre sus hallazgos presentó querella en nuestra Secretaría, el 14 de julio de 1997 contra el licenciado Carmelo Rodríguez Feliciano. Le formuló los cargos siguientes:

### PRIMER CARGO

El Lcdo. Carmelo Rodríguez Feliciano violó el Canon 8 de Ética Profesional el cual dispone que el abogado no debe permitir que sus clientes, en el trámite de los asuntos que crean la relación de abogado-cliente, incurran en conducta que sería impropia del abogado si él llevase a cabo personalmente, y conforme fuera interpretado dicho Canon por este Ilustre Foro en el caso de *Quiñones v. Jiménez Conde*, 117 D.P.R. (1986).

### SEGUNDO CARGO

El Lcdo. Carmelo Rodríguez Feliciano violentó las disposiciones del criterio general de los deberes del abogado para con los tribunales a los efectos de que la buena marcha del proceso judicial del país es responsabilidad ineludible de todo miembro de la profesión legal y que le corresponde a todo abogado procurar que prevalezca siempre en los tribunales un ambiente de decoro y solemnidad laborando por mejorar la calidad de la justicia que en éstos se imparte.

### TERCER CARGO

El Lcdo. Carmelo Rodríguez Feliciano incurrió en conducta violatoria al Canon 9 de Ética Profesional el cual obliga a todo abogado a observar para con los tribunales una conducta

que se caracteriza por el mayor respeto, desalentando y evitando ataques injustificados contra los jueces contra el buen orden en la administración de la justicia, y conforme fuera interpretado dicho Canon 9 en los casos de *Berrios v. U.P.R.*, 116 D.P.R. 88 (1985) y *Quiñones v. Jiménez Conde*, 117 D.P.R. 1 (1986).

## CUARTO CARGO

El Lcdo. Carmelo Rodríguez Feliciano violó el Canon 15 de Ética Profesional el cual establece que un abogado no debe actuar inspirado por la animosidad ni por los prejuicios de su cliente ni debe permitir que este dirija el caso ni que se convierta en el dueño de la conciencia del abogado, conforme fuera interpretado dicho Canon en el caso de Quiñones v. Jiménez Conde, 117 D.P.R. 1 (1986).

## QUINTO CARGO

El Lcdo. Carmelo Rodríguez Feliciano violó el Canon 29 de Ética Profesional, el cual señala que cualquier rencor que exista entre los clientes no debe afectar la conducta de los abogados entre sí, ni las relaciones hacia el litigante contrario.

## SEXTO CARGO

El Lcdo. Carmelo Rodríguez Feliciano violó las disposiciones de la Regla 9 de Procedimiento Civil de 1979, así como las disposiciones del Canon 17 de Ética Profesional, respecto a que la firma de un abogado en una alegación en un caso equivale a certificar que ha leído la alegación y que de acuerdo con su mejor conocimiento, información y creencia esta bien fundada.

## SÉPTIMO CARGO

El Lcdo. Carmelo Rodríguez Feliciano, violó el Canon 17 de Ética Profesional, en cuanto requiere de todo abogado el que se niegue a representar a un cliente en un caso civil cuando estuviere convencido de que se pretende por medio del mismo molestar o perjudicar a la parte contraria, haciéndole víctima de opresión o daño.

### OCTAVO CARGO

EL Lcdo. Carmelo Rodríguez Feliciano violó las disposiciones del Canon 18 de Ética Profesional el cual dispone que el principio de diligencia establecido en dicho canon; no significa que el abogado pueda realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente, ni violar las leyes del país o cometer engaños.

### NOVENO CARGO

El Lcdo. Carmelo Rodríguez Feliciano, violó el Canon 26 de Ética Profesional, el cual prohíbe a un abogado aconsejar transacciones o actos en contra de la ley, entablar pleitos viciosos e instigar falsas defensas, y que el abogado no puede justificar dichos actos con el pretexto de que al actuar sí, lo hizo siguiendo las instrucciones de su cliente, ya que el abogado debe obedecer siempre su propia conciencia y no la de su cliente.

### DECIMO CARGO

El Lcdo. Carmelo Rodríguez Feliciano, incurrió en violación al Canon 35 de Ética Profesional, el que dispone que no es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o el derecho.

### UNDECIMO CARGO

El Lcdo. Carmelo Rodríguez Feliciano, violó las disposiciones del Canon 38 de Ética Profesional que requiere de todo abogado que se esfuerce al máximo de su capacidad en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales, evitando hasta la apariencia de conducta profesional impropia.

El 18 de septiembre de 1997, el querellado presentó un escrito titulado "Contestación a Querella y Solicitud de Desestimación". Arguyó que los once (11) cargos formulados en la querella por el Procurador General no estaban

sostenidos por un señalamiento de hechos constitutivos de las violaciones éticas alegadas.  Sostiene que los cargos así formulados no imputan falta ética alguna del querellado. Alegó que la formulación de los cargos por el Procurador General son inconstitucionales porque el proceso utilizado de presentación y notificación de la querella es violatorio a su derecho constitucional a un debido proceso de ley.  Afirmó que la querella no imputa hechos constitutivos de violaciones a los Cánones de Ética Profesional que justifiquen la imposición al querellado de alguna sanción disciplinaria.

El 9 de octubre de 1997 declaramos no ha lugar la solicitud de desestimación de la querella presentada por el querellado.  Expresamos que aunque la querella no contiene el formato clásico, incluye una relación de los hechos pendientes.  Admitimos la contestación a la querella presentada.  Nombramos al licenciado Pierre Vivoni como Comisionado Especial para recibir y escuchar la prueba a ofrecerse por las partes.  El Comisionado Especial señaló conferencia con antelación al juicio para el 10 de diciembre de 1997.  No pudo celebrarse en esa fecha la conferencia con antelación al juicio porque los abogados no habían podido reunirse previamente debido a que la abogada asignada al caso en la Oficina del Procurador General había estado enferma. Las partes acordaron que el Procurador General enmendaría la querella y luego procederían a reunirse.

El 19 de febrero de 1998 el querellado solicitó nuevamente la desestimación de la querella por no aducir

hechos que justifiquen la imposición de medida disciplinaria alguna en su contra. Arguyó que la querella presentada por el Procurador General es una inmeritoria e injustificada. Sostuvo su pedimento, además, en la continua y reiterada conducta de la Oficina del Procurador General en atrasar e impedir los trámites de los procedimientos, y por el alegado incumplimiento de esa oficina con las órdenes del tribunal.

El 28 de abril de 1998, el Procurador General presentó una querella enmendada, alegadamente a los únicos efectos de relacionar las actuaciones del querellado con los cargos previamente formulados en la querella original. El Procurador General sostiene que las violaciones éticas alegadas originalmente no se refieren a un sólo acto que pueda ser fácilmente señalado, sino más bien a un patrón de conducta profesional que en lugar de propiciar la solución de las controversias judiciales entre las partes, fomentó e incrementó la animosidad y hostilidad entre ellas y promovió la dilación de los procedimientos en detrimento de la buena marcha del proceso judicial y del derecho de una menor de edad a recibir pensión alimentaria de su padre. Arguyó que tal conducta está reñida con los Cánones de Ética Profesional a tenor con lo resuelto por este Tribunal en *Quiñones v. Jiménez Conde*, 117 D.P.R. 1 (1986).

Después de estar paralizado el procedimiento disciplinario hasta que concluyeron varios procedimientos judiciales pendientes ante el Tribunal de Primera Instancia y el Tribunal Apelativo, el querellado presentó el 27 de

noviembre de 2000 una moción de desestimación de la querella. Fundamenta su petitorio en el reiterado incumplimiento del Procurador General a las órdenes de este Tribunal y a que no había mediado una adecuada notificación de los cargos formulados contra el querellado. Informó que había renunciado a la representación del señor Arguello García en los casos pendientes ante el Tribunal de Primera Instancia. No obstante, ordenamos la continuación del procedimiento disciplinario.

El 8 de mayo de 2001 emitimos resolución sustituyendo al licenciado Pierre Vivoni con el licenciado Ramón Negrón Soto como Comisionado Especial.

I

Celebrada vista evidenciaria, el Comisionado Especial rindió su informe. Concluyó que le mereció credibilidad el testimonio vertido por el licenciado Rodríguez Feliciano a los efectos que las cláusulas y condiciones estipuladas en la petición de divorcio por consentimiento mutuo fueron redactadas por el matrimonio Arguello - Santiago sin su intervención, independientemente que el mismo se redactó en su oficina. El testigo declaró que ambos firmaron la petición de divorcio en momentos distintos. Añadió que consideró el hecho que el señor Arguello García se quedara residiendo en los bajos de la estructura de vivienda en donde habían habitado juntos hasta ese momento, como un arreglo amistoso. Posteriormente se enteró que la pareja se había

reconciliado y que el señor Arguello García nunca se mudó de la propiedad.

Sobre la aparente posición contradictoria del querellado, en cuanto a la deuda por concepto de pensión alimentaria del señor Arguello García por la suma diez mil diez dólares ($10,010), el Comisionado Especial concluyó que la aseveración original del querellado a los efectos que había sido satisfecha, no puede tomarse como una alegación contraria a su conocimiento porque él no había participado en los casos donde el asunto de la pensión y la deuda contraída se había ventilado. Le impartió gran peso al hecho que tan pronto el querellado intervino en calidad de abogado en esos casos como representante legal del señor Arguello García, reconoció la deuda y presentó un plan de pago para satisfacer la misma. Solicitó, además, la rebaja de la pensión y se opuso a las distintas mociones de desacato presentadas por la señora López Peña.

El Comisionado Especial expresa no tener duda de que ambas partes exhibieron en sus escritos, presentados como parte de los procedimientos ante el Tribunal de Primera Instancia, estilos de redacción que reflejan su animosidad. Concluyó, a base de los escritos presentados por el querellado ante el Tribunal de Primera Instancia, que éste tenía una opinión formada sobre la licenciada López Peña, a los efectos que mantenía un patrón de hostigamiento y persecución contra sus clientes. Tal animosidad se agravó durante el mes de febrero de 1994. Principalmente de parte

del señor Arguello García hacia ella, por algunas preguntas del Interrogatorio y Requerimiento de Admisiones que éste le cursó, a través del querellado, a la licenciada López Peña y de algunas contestaciones del señor Arguello García a el interrogatorio que le había cursado la licenciada López Peña, a través de su abogado.

El querellado notificó a la licenciada López Peña un Interrogatorio y Requerimiento de Admisiones fechado el 15 de agosto de 1994, en el cual le formuló una serie de preguntas y requerimientos de admisión que contenían una serie de aseveraciones que ésta consideró impertinentes al asunto en controversia y altamente indecorosas, impropias y ofensivas. Las preguntas y los requerimientos de admisiones aludidos contienen hechos relacionados con el alegado hostigamiento de la licenciada López Peña al señor Arguello García. Tales preguntas y requerimientos parten de unas premisas. Primero, que la licenciada López Peña estuvo en alguna ocasión en las oficinas donde trabajaba el señor Arguello García. Allí ocurrieron unos incidentes que produjeron una resolución del Tribunal de Primera Instancia en uno de los casos donde se le ordenó a la licenciada López Peña que se abstuviera de intervenir en forma directa o indirecta con el señor Arguello García en su vida personal o profesional y con sus patronos presentes o pasados. Segundo, una carta que la licenciada López Peña le escribió a la señora María José Zamora, madre de otros tres (3) hijos menores de edad del señor Arguello García que residían en Nicaragua. Las referidas preguntas y

requerimientos partían de la premisa que en esa carta ella le expresó a la señora Zamora de la vida feliz que disfrutó con el señor Arguello García cuando estaban casados y de sus preferencias sexuales durante la existencia de esa relación. La licenciada López Peña aceptó la existencia de esa carta. No obstante, se molestó porque entendió que su contenido no tenía pertinencia alguna con la controversia sobre la pensión alimenticia, sino que pretendía cuestionar sus preferencias sexuales.

Concluyó el Comisionado Especial, al evaluar el testimonio de las partes, que el querellado hizo referencia a la carta con el propósito de establecer la alegada conducta obsesiva y persecutoria de la licenciada López Peña contra su cliente. El querellado cursó, además, un requerimiento de admisiones a la licenciada López Peña en el que hizo referencia a aspectos relacionados con su vida y conducta cuando era estudiante. El Comisionado Especial entendió que el mismo no era pertinente a la controversia y sí producto de un relato del señor Arguello García a su abogado, el querellado, y que éste entendió, incorrectamente, que podía utilizar con el propósito de establecer la alegada conducta obsesiva y persecutoria de la licenciada López Peña contra su cliente. Concluyó que, ante esa conducta del querellado, era natural que la licenciada López Peña se molestara.

El Comisionado Especial determinó que, como parte de la contestación bajo juramento del señor Arguello García de fecha del 22 de febrero de 1994 a un Interrogatorio y

Requerimiento de admisiones que le cursara la señora López

Peña en el caso KDI 84-389 ante el Tribunal de Primera

Instancia, se hicieron aseveraciones ofensivas y lesivas a la

dignidad de la señora López Peña, abogada de profesión, del

Tribunal de Primera Instancia y de los jueces que

intervinieron en los casos entre ellos, al afirmar que su

encarcelamiento fue motivado por la influencia que ella tenía

con altos funcionarios del gobierno. Las aludidas

imputaciones surgen de las contestaciones 39 y 42 del

referido escrito que leen de la forma siguiente:

> **39. No tuve ninguna participación ni defensa en el caso RF-76-1441. Myrna Y. López usando su influencia en el gobierno y sabiendo que yo no residía en Puerto Rico, consiguió del tribunal la Sentencia a su favor. Para 17 años más tarde y después de 17 años continuos pleitos hacer su reclamación con el único propósito de aprovecharse de la situación con el uso de su influencia en el gobierno.**

> **42. Se niega. Una vez el tribunal decidió que esa deuda a pesar de las circunstancias envueltas existía, determinó que propusiera un plan de pago que me permitiera ponerme al día. En ese proceso Myrna López consiguió con su influencia con altos funcionarios de gobierno que otro Juez interviniera y ordenara fuera puesto en prisión; envileciendo a su propia hija y nietos.**

Fue en ese momento cuando la licenciada López Peña

decidió presentar una queja contra el licenciado Rodríguez

Feliciano ante este Tribunal.

El querellado justificó las aseveraciones anteriores

alegando que el señor Arguello García subscribió las mismas e

insistió en contestar de esa forma y manera, por lo que su

contenido era de su única y entera responsabilidad. No

obstante, el contenido de las mismas fue discutido por el querellado con su cliente. Declaró ante el Comisionado Especial que él no creyó lo que afirmaba su cliente sobre las influencias de la licenciada López Peña ni estaba de acuerdo sobre sus expresiones lesivas dirigidas a los jueces, ya que tenía una buena opinión de la conducta personal y oficial de esos funcionarios. Testificó que en consideración a la libertad de expresión del señor Arguello García, de que esas aseveraciones eran de su entera responsabilidad y debido a que éste insistió en contestar en esa forma, se transcribieron y él las envió al abogado de la otra parte. No obstante, puntualizó que si en el futuro se encontrara con una situación como esa, de tanta animosidad entre las partes, renunciaría a la representación de su cliente.

El querellado presentó el 28 de diciembre de 1993 ante el entonces Tribunal Superior, en el caso KDI 76-1441 (702), un escrito titulado "Moción proponiendo plan de pagos para saldar deuda de 1976 a 1979 reclamada el 21 de abril de 1992" en la cual expresó lo siguiente:

> Le adelantamos al Honorable Tribunal que en el caso K DI84-3898 estamos solicitando una rebaja en el pago de pensión debido a que el compareciente no tiene recursos para pagar dicha pensión **ya que como consecuencia del hostigamiento de la peticionaria el señor Arguello se divorció conforme al caso K DI93-0021 del 2 de marzo de 1993, Tribunal Superior, Sala de San Juan, donde el compareciente se obligó a pagar una pensión alimenticia para sus tres hijos menores de edad en la cantidad de $600.00 mensuales.** (Énfasis suplido).

En su memorando de derecho del 28 de febrero de 1995, en el caso KAC 2004-68, sobre fraude de acreedores, el querellado como abogado del señor Arguello García y la señora Santiago Colón, expresó lo siguiente.

> Es triste ver como una ciudadana ha estado por los últimos diecisiete años (aproximadamente) hostigando, persiguiendo, amenazando, al demandado y utilizando al Honorable Tribunal para lograr esos objetivos. Ya es hora que este Honorable Tribunal le haga justicia al demandado. Hasta cuando la demandante va a continuar haciendo los mismos planteamientos en diferentes salas. Le recordamos al Honorable Tribunal que la demandante es abogada, aunque no ejerce la profesión por ser Directora de Personal del Departamento del Trabajo y Recursos Humanos.

Aún cuando en el pleito incoado por la licenciada López Peña y su hija se alegó que la presentación de una petición de divorcio por mutuo consentimiento por el señor Arguello García y la señora Santiago Colón constituía y pretendía un fraude de acreedores, en el que el querellado representaba una parte, éste asumió la representación legal de la señora Santiago Colón cuando el referido pleito había sido calificado como colusorio por un funcionario del Tribunal de Primera Instancia al evaluar la prueba. El querellado, sobre este asunto, expresó que no consideró que existiera conflicto de interés de su parte en tales asuntos. Así lo entendió también el Procurador General.

Cuando el querellado solicitó del Tribunal de Primera Instancia el 4 de diciembre de 1998 que lo relevara como abogado del señor Arguello García en los casos KDI 76-1441 y KDI 84-3898, expuso como razón para ello que él se había

"...afectado por la manera injusta en que se le ha fijado una pensión de $500.00 para (sic) pariente adulta cuando el ingreso no controvertido del Sr. Elías Arguello García (sic) de $700.00".

El Comisionado Especial consideró que el querellado pudo incurrir en prácticas que están en conflicto con varios de los Cánones de Ética Profesional a que hace alusión el Procurador General. Puntualizó los Cánones 8,9,15 y 29 por haber actuado el querellado inspirado por la animosidad y prejuicio de su cliente y permitir que hasta cierto punto dirigiera su posición en el trámite de los procedimientos.

Varios de los escritos presentados por el querellado ante el Tribunal de Primera Instancia fomentaron e incrementaron la animosidad entre las partes, que llegó al extremo de que Ana Haydeé Arguello López no tenía ninguna comunicación con su padre.

II

Corresponde al Comisionado Especial, designado por este Tribunal, atender una querella presentada contra un abogado, recibir la prueba, así como evaluar y dirimir la evidencia conflictiva. Tal funcionario ocupa el papel del juzgador de primera instancia y, por lo tanto, está en mejor posición para aquilatar la prueba testifical.[1] Sus determinaciones de hechos, basadas en la prueba testifical merecen nuestra mayor

---

[1] *In re*: González Ortiz, res. 2 de junio de 2004, 162 D.P.R. ___ (2004), 2004 T.S.P.R. 86, 2004 J.T.S. 90; *In re*: Morales Soto, 134 D.P.R. 1012 (1994).

deferencia.[2] Cuando esas determinaciones están sostenidas por la prueba obrante en nuestro expediente, no intervendremos con las mismas, ausente de una demostración de pasión, prejuicio, parcialidad o error manifiesto en su apreciación.[3]

No hemos encontrado nada en el expediente que nos anime a intervenir con las determinaciones de hechos formulados por el Comisionado Especial. Están apoyadas en la evidencia presentada y admitida. La presunción sobre su corrección no ha sido rebatida.

## III

Constituye conducta antiética de un abogado el permitir que su cliente, en el trámite de los asuntos que se realicen dentro de la relación de abogado y cliente, incurra en conducta que sería impropia del abogado de llevarla a cabo personalmente. De persistir un cliente en incurrir en tal conducta impropia, al abogado tiene que terminar sus relaciones profesionales con él. Tal normativa tiene particular aplicación a las relaciones con los tribunales, funcionarios judiciales, los jurados, los testigos **y las otras partes litigantes.**[4] **El abogado debe tratar a las**

---

[2] *In re*: González Ortiz, *supra*; *In re*: Soto López, 135 D.P.R. 642 (1994).

[3] *In re*: González Ortiz, *supra*; *In re*: Soto Colón, res. 9 de noviembre de 2001, 155 D.P.R.___ (2001), 2001 T.S.P.R. 166, 2001 J.T.S. 166; *In re*: Arroyo Fernández, 133 D.P.R. 364 (1993); *In re*: Rivera Arvelo y Ortiz Velázquez, 132 D.P.R. 840 (1993); *In re*: Colton Fontán, 128 D.P.R. 1 (1991).

[4] Canon 8 de Ética Profesional, 4 L.P.R.A. Ap. IX.

**partes adversas con respeto y consideración. No debe actuar inspirado por la animosidad ni por los prejuicios de su cliente, ni debe permitir que éste dirija el caso ni que se convierta en el dueño de su conciencia.** Es impropio el utilizar los procedimientos legales en forma irrazonable o con el fin de hostigar una parte contraria. [5] **Son los clientes de los abogados los litigantes ante los tribunales, no ellos. Cualquier rencor que exista entre sus clientes no debe afectar la conducta de los abogados** entre sí ni las relaciones hacia la parte adversa. [6]

Concluimos que el querellado desarrolló un estado de animosidad contra la parte contraria, licenciada López Peña, por entender que ésta mantenía un patrón de hostigamiento y persecución contra sus clientes, el señor Arguello García y señora Santiago Colón. Permitió que su cliente, señor Arguello García incurriera en conducta, durante el trámite judicial, que le era impropia de llevarla a cabo personalmente. No le dispensó respeto y consideración a la parte contraria. Su conducta fomentó e incrementó la animosidad entre las partes, en vez de ir dirigida a propiciar la solución del problema y la controversia entre ellos. El querellado actuó inspirado por la animosidad de su cliente, señor Arguello García y permitió que éste dirigiera el caso y se convirtiera en el dueño de su conciencia.

---

[5] Canon 15 de Ética Profesional, 4 L.P.R.A. Ap. IX.

[6] Canon 29 de Ética Profesional, 4 L.P.R.A. Ap. IX.

Es intolerable y reñida con la conducta ética mínima que tienen que observar los abogados en el trámite de reclamación y cobro de pensiones alimenticias de menores de edad el fomentar la animosidad de las partes en lugar de propiciar la solución del problema entre ellos. El abogado puede ser fogoso y vehemente en la defensa de los intereses de su cliente, pero no puede, por imperativo ético, promover o fomentar la hostilidad y la animosidad de sus clientes contra la parte contraria. Los Cánones de Ética Profesional establecen y delimitan una frontera entre la diligencia y responsabilidad que le debe todo abogado a los clientes y los casos que le han sido encomendados, frente a las pasiones, rencillas y rencores que puedan motivar a su cliente. Los abogados no puedan convertirse e instrumentos de las pasiones, rencillas y rencores de sus clientes. Los jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones deben velar porque los Cánones de Ética Profesional sean observados por los abogados, e informar al Tribunal Supremo cualquier violación de los mismos.[7]

Concluimos que el querellado violó los Cánones 8,15 y 29 de Ética Profesional. A base de la evidencia presentada, admitida y dirimida por el Comisionado Especial, no encontramos que el querellado haya incurrido en las demás faltas éticas imputadas.

_____

[7] *In re*: Montañez Miranda, res. 18 de junio de 2002, 157 D.P.R.___ (2002), 2002 T.S.P.R. 122, 2002 J.T.S. 123; *In re*: Matos González, 149 D.P.R. 817 (1999); *In re*: Veléz Cardona, 148 D.P.R. 505 (1999); Quiñones v. Jiménez Conde, 117 D.P.R. 1 (1986).

IV

Para determinar la sanción disciplinaria aplicable a un abogado querellado podemos tomar en cuenta factores como la reputación del abogado en su comunidad, el previo historial de éste, si es su primera falta, la aceptación de la misma y su sincero arrepentimiento, si se trata de una conducta aislada y cualesquiera otras consideraciones, ya bien atenuantes o agravantes que medien, a tenor con los hechos.[8]

El abogado querellado no tiene otra queja en su expediente. Esta es su primera falta ética. Su historial no presenta otra conducta similar a la del presente caso.

V

Por los fundamentos antes expuestos apercibimos al querellado de su deber y obligación de cumplir cabalmente en el futuro con los Cánones de Ética Profesional.

---

[8] *In re*: Montalvo Guzmán, res. 20 de mayo de 2005, 164 D.P.R.___ (2005), 2005 T.S.P.R. 82, 2005 J.T.S. 87; *In re*: Quiñones Ayala, res. 30 de junio de 2005, 165 D.P.R.___(2005), 2005 T.S.P.R. 99, 2005 J.T.S. 104; *In re*: Avilés, Tosado, res. 5 de septiembre de 2002, 157 D.P.R.___ (2002), 2002 T.S.P.R. 124, 2002 J.T.S. 130; *In re*: Sepúlveda Girón, res. 24 de octubre de 2001, 155 D.P.R.___ (2001), 2001 T.S.P.R. 153, 2001 J.T.S. 156; *In re*: Tejada Rivera, res. 24 de septiembre de 2001, 155 D.P.R.___ (2001), 2001 T.S.P.R. 136, 2001 J.T.S. 138; *In re*: Guadalupe, Colón, res. 19 de septiembre de 2001, 155 D.P.R.__ (2001), 2001 T.S.P.R. 128, 2001 J.T.S. 131; *In re*: Vélez Barlucea, 152 D.P.R. 298 (2000).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

CP-1997-7

Carmelo Rodríguez Feliciano

SENTENCIA

San Juan, Puerto Rico, a 14 de septiembre de 2005.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, apercibimos al querellado de su deber y obligación de cumplir cabalmente en el futuro con los Cánones de Ética Profesional.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo