per curiam:
La Leda. Dayra Amill Acosta fue admitida al ejercicio de la abogacía el 17 de enero de 1996 y al ejercicio del notariado el 3 de mayo de 1996. El 15 de noviembre de 2001, el Sr. Harbert Villafañe Reyes presentó una queja contra la licenciada Amill Acosta ante la Oficina del Procu-rador General. En síntesis, el señor Villafañe Reyes relató que contrató los servicios profesionales de la abogada Amill Acosta para que lo representara en un caso penal. Este trataba de una denuncia por infracciones a los Arts. 166 y 169 de Código Penal de 1974 (33 L.P.R.A. secs. 4272 y 4275) (apropiación ilegal agravada e interferencia fraudu-lenta con contadores). Además, el señor Villafañe Reyes contrató a la licenciada Amill Acosta para que presentara una acción civil de colindancia y daños y perjuicios.
Sin embargo, la acción civil fue desestimada. El señor Villafañe Reyes alegó que la negligencia de la querellada en el diligenciamiento de los emplazamientos provocó que *937 el Tribunal de Primera Instancia desestimara el pleito con perjuicio.
Durante el trámite procesal de la querella, recibimos dos informes de la Oficina del Procurador General, además de varias comparecencias de la licenciada Amill Acosta. Posteriormente, mediante Resolución de 28 de agosto de 2009, designamos a la Leda. Jeannette Ramos Buonomo como Comisionada Especial para que recibiera la prueba necesaria y rindiera el informe sobre los hechos en controversia.
En la vista en su fondo celebrada ante la Comisionada Especial, ambas partes acordaron someter el caso por el expediente e hicieron constar que no tenían objeción a que se tomara conocimiento judicial de los expedientes del caso penal y civil en los que estuvo involucrado el señor Villa-fañe Reyes. La Comisionada Especial presentó su informe ante este Foro, en el cual concluyó que la querellada Amill Acosta violó los Cánones 18 y 20 del Código de Ética Pro-fesional, 4 L.P.R.A. Ap. IX. Veamos en detalle los hechos que nos obligan a ejercer nuestra jurisdicción disciplinaria.
I
El 17 de octubre de 2000, la licenciada Amill Acosta, en representación del señor Villafañe Reyes y su esposa, la Sra. María C. Colón Ruiz, presentó una demanda de colin-dancias y daños y perjuicios. Los emplazamientos se expi-dieron el 30 de octubre de 2000 y se recibieron en la oficina el 13 de noviembre del mismo año.
La licenciada Amill Acosta señaló que entregó los em-plazamientos al Sr. Richard Torres Loyola para que los diligenciara. No obstante, los emplazamientos nunca se diligenciaron. Ante esta situación, la querellada Amill Acosta adujo que no conocía el paradero de esos documen-tos y que el señor Torres Loyola abandonó la jurisdicción de Puerto Rico y no podía contactarlo.
*938 En su defensa, la licenciada Amill Acosta alegó que ha-bía renunciado a la representación legal del señor Villa-fañe Reyes en el caso civil, por discrepancias con el Ledo. Joarick Padilla Avilés. El matrimonio Villafañe-Colón con-trató al licenciado Padilla Avilés para que se uniera a su representación legal en el caso criminal. Según el “mejor entender” de la licenciada Amill Acosta, la representación legal del licenciado Padilla Avilés también abarcaba el caso civil de colindancias y daños y peijuicios.
El 26 de septiembre de 2001, casi doce meses después de presentada la demanda, el foro primario dictó una senten-cia en la que desestimó, con perjuicio, la acción civil, con-forme a la Regla 4.3(b) de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III). Dicha sentencia desestimatoria se le no-tificó a la licenciada Amill Acosta el 28 de septiembre de 2001.
No se deduce del expediente del caso civil que el licen-ciado Padilla Avilés se unió a la representación legal de los demandantes, previo a la fecha de la sentencia que deses-timó la acción. Tampoco surge del informe que la quere-llada Amill Acosta renunció a la representación legal de los demandantes en el caso. Ante este cuadro fáctico, la licen-ciada Amill Acosta asegura que sí envió por correo regular una moción en la que “renunció” a la representación legal del matrimonio Villafañe-Colón. Sin embargo, la propia querellada acepta que dicha moción de renuncia no se en-cuentra en el expediente del caso, y también acepta que nunca recibió comunicación de parte del foro de primera instancia sobre la supuesta renuncia de representación legal.
Aproximadamente dos meses después de desestimada la acción civil, el señor Villafañe Reyes presentó por derecho propio una moción de reconsideración de la sentencia dictada. En su moción, Villafañe Reyes alegó que la razón para no emplazar fue la negligencia de la querellada Amill Acosta en el trámite del caso.
*939 El 25 de marzo de 2002, el licenciado Padilla Avilés com-pareció por primera vez al Tribunal de Primera Instancia en el caso civil y presentó una moción de relevo de senten-cia al amparo de la Regla 49.2 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III).
Subsiguientemente, el caso siguió su curso de manera incierta hasta que, finalmente, el Tribunal de Apelaciones emitió una sentencia el 27 de diciembre de 2002 mediante la cual denegó la reapertura del caso que solicitó el matri-monio Villafañe-Colón. De esta forma, prevaleció de forma final y firme la desestimación con perjuicio de la acción civil que decretó el foro primario.
II

Infracción del Canon 18

El Canon 18 del Código de Ética Profesional (Canon 18), 4 L.P.R.A. Ap. IX, establece que
[s]erá impropio de un abogado asumir una representación pro-fesional cuando está [sic] consciente de que no puede rendir una labor idónea competente y que no puede prepararse ade-cuadamente sin que ello apareje gastos o demoras irrazona-bles a su cliente o a la administración de la justicia.
Es deber del abogado defender los intereses del cliente dili-gentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurí-dica en general estima adecuada y responsable. (Enfasis suplido.)
Hemos manifestado que “todo miembro de la profesión legal tiene el ineludible deber de defender los intereses de su cliente con el compromiso de emplear la mayor capacidad, lealtad, responsabilidad, efectividad y la más completa honradez’ ”. In re Rivera Ramos, 178 D.P.R. 651, 664 (2010), citando a In re Cuevas Velázquez, 174 D.P.R. 433, 442 (2008).
Se ha “sostenido sin ambages, que aquella actuación ne-gligente que pueda conllevar, o que en efecto conlleve, la *940 desestimación o el archivo de un caso, se configura violato-ria del citado Canon 18”. In re Pujol Thompson, 171 D.P.R. 683, 689 (2007).
Un abogado no puede olvidar que la indiferencia, desidia, despreocupación, inacción y displicencia en la tramitación de un caso viola el Canon 18. In re Rodríguez Lugo, 175 D.P.R. 1023, 1028 (2009), citando a In re Pizarro Colón, 151 D.P.R. 94, 105 (2000). En In re Verdejo Roque, 145 D.P.R. 83, 87 (1998), reiteramos que “un abogado que acepta un caso y luego no demuestra la competencia y diligencia que exige el ejercicio de la abogacía y tampoco mantiene al cliente informado de los desarrollos del caso, incurre en una violación seria a la ética profesional”.
Al definir el término diligencia, se ha mencionado que “implica que el [abogado] realice las gestiones que le fueron encomendadas en momento oportuno, en forma adecuada y sin dilaciones que puedan afectar la pronta solución de la controversia”. S. Steidel Figueroa, Ética y Responsabilidad del Abogado, San Juan, Pubs. J.T.S, 2010, pág. 179. Anteriormente, este Tribunal ha discutido situaciones prácticas que colocan en evidencia una violación del deber de diligencia que impone el Canon 18. Entre estas, cabe destacar las siguientes:
... (1) no comparecer a los señalamientos del tribunal; (2) no contestar los interrogatorios sometidos; (3) no informar a las partes sobre la presentación de un perito; (4) desatender o abandonar el caso; (5) permitir que expire el término prescrip-tivo o jurisdiccional de una acción; (6) cualquier tipo de actua-ción negligente que pueda conllevar o, en efecto, resulte en la desestimación o archivo del caso. In re Vilches López, 170 D.P.R. 793, 798 (2007).
La licenciada Amill Acosta, al aceptar la encomienda de representar al señor Villafañe Reyes y a su esposa en el caso civil, tenía el deber insoslayable de proteger los inte-reses de estos y desempeñarse a la altura que requiere esta profesión. La querellada violentó el Canon 18 al faltar a la *941 diligencia debida en procurar que se emplazara a los de-mandados en la acción civil.
Hemos manifestado que la “conducta de un abogado al omitir el diligenciamiento de los emplazamientos dentro del término correspondiente, resultando ello en la desestimación con perjuicio de la causa de acción de la quejosa, incide con las disposiciones del Canon 18 del Código de Ética Profesional, supra, el cual obliga a todo abogado a rendir una labor idónea y competente en todo momento”. In re Rosado Cruz, 142 D.P.R. 957, 961 (1997).
La licenciada Amill Acosta recibió los emplazamientos del caso civil para diligenciarlos y no se ocupó de que estos se tramitaran. Intenta justificar su negligencia en el hecho de que los entregó a un emplazador que luego abandonó la jurisdicción. Sin embargo, ese hecho no la releva de respon-sabilidad frente al cliente. Si realmente hubiese desapare-cido el emplazador, la licenciada Amill Acosta tenía la al-ternativa de acudir al tribunal para que se expidieran otros emplazamientos y de esa forma cumplir cabalmente con el deber de diligencia que le impone el Canon 18. Al no actuar de esa forma, la querellada violentó ese canon.
III

Infracción del Canon 20

El Canon 20 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone, en lo pertinente, que
[c]uando el abogado haya comparecido ante un tribunal en representación de un cliente no puede ni debe renunciar la representación profesional de su cliente sin obtener primero el permiso del tribunal y debe solicitarlo solamente cuando exista una razón justificada e imprevista para ello.
Antes de renunciar a la representación de su cliente el abo-gado debe tomar aquellas medidas razonables que eviten per-juicio a los derechos de su cliente tales como notificar de ello al cliente; aconsejarle debidamente sobre la necesidad de una nueva representación legal cuando ello sea necesario; conce-derle tiempo para conseguir una nueva representación legal; *942 aconsejarle sobre la fecha límite de cualquier término de ley que pueda afectar su causa de acción o para la radicación de cualquier escrito que le pueda favorecer; y el cumplimiento de cualquier otra disposición legal del tribunal al respecto, inclu-yendo la notificación al tribunal de la última dirección cono-cida de su representado.
Por otro lado, la Regla 12.3 para la Administración del Tribunal de Primera Instancia, 4 L.P.R.A. Ap. II-B, establece que el abogado que solicite renunciar a la representación legal de un cliente, luego de comparecer al tribunal, debe incluir en su solicitud las últimas direcciones residenciales y postales, tanto del cliente como del abogado que renuncia. Además, “deb[e a]creditar que ha notificado la renuncia a su cliente y debe cumplir con lo dispuesto en el Canon 20”. Steidel Figueroa, op. cit., pág. 259.
Asimismo, en lo que respecta al efecto de la presentación de una moción de renuncia profesional de un abogado en un caso, hemos mencionado que mientras
... el abogado no sea relevado de su responsabilidad por el tribunal, tiene el deber ineludible de desplegar el más alto grado de competencia y diligencia posible en su gestión profesional. En vista de lo anterior, es preciso enfatizar que la presentación de una moción de renuncia de representación pro-fesional no significa que el abogado está automáticamente des-vinculado de su responsabilidad hacia su cliente y el tribunal. Hasta tanto el tribunal autorice la moción de renuncia de re-presentación legal, el abogado debe representar a su cliente de la forma más responsable, cabal y eficiente, y tiene que con-ducirse según los postulados éticos que emanan del Código de Etica Profesional y rigen la profesión. (Énfasis en el original y citas omitidas.) In re Torres Muñoz, 174 D.P.R. 907, 916 (2008).
En otras palabras, un abogado no debe presumir que con la mera presentación de una solicitud de renuncia finaliza su vínculo con un cliente y sus responsabilidades frente al tribunal. Matos v. Metropolitan Marble Corp., 104 D.P.R. 122, 125 (1975).
El propósito de esta norma es “permitir al tribunal man- *943 tener el contacto con un cliente, de modo que las notifica-ciones del caso puedan hacerse directamente a la parte hasta que ésta gestione y anuncie el nombre de su nuevo abogado”. Véase Matos v. Metropolitan Marble Corp., supra. Es decir, la intención de esta regla es no dejar des-provisto al cliente de representación legal durante el pro-ceso judicial. Por ese motivo, cuando el tribunal autoriza la renuncia debe “conceder un plazo razonable a la parte para que gestione un nuevo abogado”.
En el caso que nos ocupa, la querellada violentó el Canon 20 porque renunció, de facto, a la representación de sus clientes sin antes obtener permiso del tribunal. En el expediente del caso no aparece la supuesta moción de renuncia que envió por correo regular la licenciada Amill Acosta. Aunque no existe una regla plasmada en nuestro Derecho positivo que regule la forma de presentar una moción de renuncia profesional en un caso, por su envergadura se recomienda enfáticamente que el abogado presente la moción personalmente o por conducto de un mensajero, o, a lo sumo, por correo certificado. De esta forma, se asegura que la moción llegue al tribunal y se evitan situaciones lamentables como esta.
La querellada también violentó el Canon 20 por una razón adicional e independiente: no tomó las medidas para orientar debidamente a los esposos Villafañe-Colón sobre su alegada renuncia al caso, y así proteger los derechos del matrimonio. Si la abogada hubiese actuado de esa forma, con toda probabilidad el matrimonio Villafañe-Colón ha-bría comparecido con nueva representación legal para evi-tar que le desestimaran el caso.
El Canon 20 imponía a la querellada Amill Acosta la obligación de tomar medidas razonables para evitar perjui-cios a sus clientes y de notificarles sobre los términos en curso que podrían afectarles. La licenciada Amill Acosta no presentó prueba que demostrara que tomó medidas o que orientó a los clientes acerca de los términos que iban a *944 expirar. Ni siquiera solicitó la renuncia a la representación legal, según requiere nuestro ordenamiento jurídico. Al así actuar, dejó a sus clientes desprovistos de representación legal, lo que culminó en la sentencia desestimatoria de la acción civil porque no se emplazó a la parte demandada.
IV
Resta ahora determinar la sanción que debemos imponer a la querellada. Para imponer una sanción disciplinaria a un abogado por conducta impropia, es necesario considerar su historial previo; si goza de buena reputación; la aceptación de la falta y su sincero arrepentimiento; si se realizó con ánimo de lucro, y cualquier otro factor pertinente a los hechos. In re Rodríguez Lugo, supra; In re Díaz Ortiz, 150 D.P.R. 418 (2000); In re Arroyo Rivera, 148 D.P.R. 354 (1999).
Recientemente, en In re Santos Rivera, 172 D.P.R. 703 (2007), disciplinamos a un abogado que no fue diligente en la representación de un cliente, retuvo indebidamente el expediente del litigio después de presentar su renuncia al tribunal correspondiente y, además, incumplió con el deber de todo abogado de brindar su dirección actualizada a nuestra Secretaría. Todo ello fue una clara violación de los Cánones 18 y 20 del Código de Ética Profesional, supra. No obstante, por su buen historial profesional, limitamos la sanción a tres meses.
En el caso que nos ocupa se encuentran presentes varios atenuantes. En primera instancia, la querellada hace cons-tar que lamenta profundamente lo que ocurrió. Hemos se-ñalado que la aceptación de la falta constituye un ate-nuante a considerar a la hora de sancionar a un abogado. In re Vilches López, supra, pág. 801.
Por otro lado, esta es la primera falta de la licenciada Amill Acosta en su carrera jurídica. Ya en el pasado hemos reconocido que esto constituye otro atenuante que se *945 considera. Véase In re Rodríguez Feliciano, 165 D.P.R. 565, 582 (2005).
Considerado todo lo anterior, ordenamos la suspensión inmediata de la Leda. Dayra Amill Acosta de la práctica de la profesión por el término de tres meses. La querellada tiene el deber de notificar a todos sus clientes su inhabili-dad para continuar con su representación y deberá devolver a estos los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no rendidos. Además, tiene el deber de informar oportunamente de su suspensión a los foros judiciales y administrativos. Estas gestiones se deberán certificar a este Tribunal dentro del término de treinta días a partir de la notificación de esta decisión.

Se dictará sentencia de conformidad.