ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| LUMA ENERGY SERVCO, LLC.<br><br>Apelado<br><br>v.<br><br>NEZAR KHALED CORPORATION; NEZAR KHALED; TOTAL ENERGIES MARKETING PUERTO RICO CORP.<br><br>Apelante | KLAN202400731 | Apelación procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso Núm.: CA2023CV02418<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente) |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

El 1 de agosto de 2024, comparece ante nos TotalEnergies Marketing Puerto Rico Corp., en adelante apelante, mediante *Recurso de Apelación* solicitando que revoquemos la *Sentencia* del 24 de mayo de 2024, emitida por el Tribunal de Primera Instancia Sala de Carolina (TPI-Carolina). Mediante esta, el TPI-Carolina expidió orden de interdicto preliminar y permanente a favor de LUMA Energy Serv. Corp., en adelante apelado, y contra la parte apelante, ordenando el desalojo de los negocios tras declararles en invasión de la servidumbre constituida a favor de la Autoridad de Energía Eléctrica.

Por los fundamentos que expondremos a continuación, *Modificamos y así Modificada se Confirma la Sentencia* recurrida.

**I.**

El 1 de agosto de 2023, la parte apelada presentó *Solicitud de Injunction* contra la parte apelante. A través de esta solicitud buscaban reivindicar su derecho sobre una servidumbre que pasa justo sobre parte de la finca 42,968 en la que se encuentran las propiedades que le pertenecen a la parte demandada, aquí apelante. Dicha servidumbre se había inscrito inicialmente en la Finca número 1,263.

La controversia tiene su génesis en el 31 de diciembre de 1966, cuando el propietario de la finca 1,263, Cobian's Metropolitan Circuit, Inc., otorgó la Escritura Número 23 sobre Segregación, Compraventa, Hipoteca y Constitución de Servidumbre. A través de esta, segregaron la finca 1,263 en dos parcelas, las cuales, a su vez, enajenó y otorgó garantía hipotecaria. Las parcelas producto de la mencionada segregación tienen las siguientes descripciones:

> a. PARCELA A: Parcela de mil cuatrocientos sesenta y nueve metros cuadrados con veinte centímetros de otro (1,469.20 M/C), equivalentes a tres mil setecientas treinta y ocho diez milésimas de cuerda (.3738 cdas.), con un frente de Norte a Sur de treinta y cinco metros (35.000) y un fondo en la colindancia con Pilar Isaac de treinta y siete metros con ochocientos cincuenta y dos milímetros (37.852) y en la colindancia con la finca principal de treinta y seis metros con cien milímetros (36.100) y en la colindancia Este, de cuarenta y seis metros con trescientos noventa y seis milímetros (46.396), radicada en el barrio Hoyo Mulas del término municipal de Carolina, Puerto Rico, colindando por el Norte, con Pilar Isaac; por el Sur y Este con la finca principal de donde se segrega; y por el Oeste con la Parcela B que se describirá inmediatamente después de ésta

> b. PARCELA B: Parcela de trescientos noventa y siete metros cuadrados con veintisiete centímetros de otro (397.27 M/C), equivalentes a mil once diez milésimas de cuerda (.1011 cdas.), con un frente de Norte a Sur, con la Carretera número Ochocientos Ochenta y Siete (887) de treinta y un metros con doscientos doce milímetros (31.212) y un fondo en la colindancia Norte de doce metros con quinientos ochenta y dos

milímetros (12.582); en la colindancia Sur de doce metros (12.000); en el lado Este en la colindancia con la Parcela A de treinta y cinco metros (35.000), situada en el barrio Hoyo Mulas del término municipal de Carolina, Puerto Rico, colindando por el Norte, con Pilar Isaac; por el Sur y Este con la finca principal de donde se segrega; y por el Oeste, con la Parcela A anteriormente descrita.

El 12 de abril de 1966, el Estado Libre Asociado de Puerto Rico, en beneficio de la Autoridad de Fuentes Fluviales de Puerto Rico, presentó la Demanda E-66-384 y otros, Estado Libre Asociado de Puerto Rico v. Cobian's Metropolitan Circuit, Inc., sobre expropiación forzosa. Esta se presentó con el propósito de adquirir los derechos reales de servidumbre en varias fincas, para uso y beneficio de la Autoridad de Fuentes Fluviales de Puerto Rico. En el caso E-66-384 y/o, para el 26 de octubre de 1967, el Tribunal que atendió dicho caso, emitió una *Resolución* mediante la cual enmendó una Resolución previa, dictada el 12 de abril de 1966, a los fines de:

a. Incluir la Servidumbre 19, 19-A y 19-1.

b. Ordenarle al Registro de la Propiedad a que cancelara cualquier inscripción que hubiere hecho e insertar las servidumbres tal y como se describen en la Resolución.

c. Declarar expropiados y establecidos a favor del Estado Libre Asociado de Puerto Rico, para uso y beneficio de la Autoridad de Fuentes Fluviales de Puerto Rico, los derechos reales y perpetuos de la finca 1,263, Tomo 29, Folio 232 de Carolina, específicamente sobre el siguiente predio de la finca:

RÚSTICA: Radicada en el Barrio Martín González del término municipal de Carolina con una cabida de 0.204 cuerda equivalente a 801.80 metros cuadrados y en lindes: por el Norte con terrenos de José Pilar Isaac; por el Sur con una quebrada que la separa de terrenos de Commonwealth Theaters of PR, Inc; y por el Este y Oeste con la finca afectada.

d. Se le concedió a Cobian's Metropolitan Circuit, Inc., quien figuraba como dueño registral de la finca, la

suma de $2,003.70 por concepto de compensación por la constitución de la servidumbre.

Para el 14 de noviembre de 1967, se estaban efectuando labores de construcción para la instalación de una estación de gasolina. Tanto la servidumbre como la gasolinera han estado en continuo uso desde entonces. Finalmente, el 26 de agosto de 1969, la Escritura Núm. 23 fue inscrita en el Registro de la Propiedad. La "Parcela A" de mil cuatrocientos sesenta y nueve metros cuadrados con veinte centímetros de otro (1,469.20 M/C), producto de la segregación, se inscribió como la finca 21,246 en el Tomo 273, Folio 60 en la Sección de Carolina del Registro de la Propiedad. La referida finca hoy día consta inscrita como la finca 42,968 de Carolina Sur, Sección Carolina II. El cambio en la enumeración de la finca respondió a un cambio de Sección en el Registro de la Propiedad.

De los hechos esenciales y pertinentes aceptados por las partes como que no están en controversia, están los que citamos a continuación, pues los adopta el TPI en su Sentencia.

1. TotalEnergies, antes bajo el nombre de Total Petroleum Puerto Rico, Corp. es una corporación con fines de lucro, debidamente organizada y existente bajo las leyes del ELA y registrada en el Registro de Corporaciones del Departamento de Estado de Puerto Rico bajo el número 80,482.

2. TotalEnergies (antes bajo el nombre de Total Petroleum Puerto Rico, Corp.) es la dueña en pleno dominio de la finca #42,968 (antes finca #21,246) del Barrio San Antón de Carolina, inscrita al folio 91 del tomo 1025 de Carolina Sur, Registro de la Propiedad de Carolina II, según consta de la

Certificación de Propiedad Inmueble de 28 de septiembre de 2023, expedida por el Registro.

3. Total Petroleum Puerto Rico, Corp. (hoy TotalEnergies), adquirió la finca #42,968 cuando antes se llamaba Gasolinas de Puerto Rico Corporation, mediante Compra venta de Sunshine Rentals Puerto Rico, Inc., según consta de la Escritura de Compraventa #39, otorgada ante el notario público Javier Vázquez Morales, 21 de octubre de 2004.

4. Posteriormente, conforme Resolución adoptada por su Junta de Directores, se cambió el nombre corporativo en el Registro de Gasolinas Puerto Rico Corporation a Total Petroleum Puerto Rico Corp. (hoy TotalEnergies), y se presentó ante el Registro de la Propiedad una certificación expedida el 6 de septiembre de 2005 por el Departamento de Estado, para reflejar dicho cambio de nombre.

5. La Finca #42,968, hoy día propiedad de TotalEnergies, fue originalmente segregada de la finca #1,263.

6. La segregación de la finca #42,968 ocurrió el 31 de diciembre de 1966, mediante una Escritura de Segregación, Compraventa, Hipoteca y Constitución de Servidumbre (la "Escritura de Segregación"), otorgada entre Cobian´s Metropolitan Circuit, Inc. ("Cobian´s"), y los señores Don José E. Izquierdo y su esposa Doña María Teresa San Miguel, y Don Jorge Ortiz Brunet y su esposa Doña María Mercedes San Miguel (los "Matrimonios Izquierdo y Ortiz Brunet").

7. En la Escritura de Segregación se hace constar que la parte vendedora (i.e., Cobian´s), segregó la porción descrita en el acápite "A" como una parcela de 1,469.20 metros

cuadrados, para que formase una finca "separada y distinta" de la finca principal.

8. En la Escritura de Segregación, al describir la finca principal de la cual se segregó la finca #42,968, indica: "la descrita finca se halla afecta a una serie de cargas y gravámenes los cuales aparecen en el Registro de la Propiedad a la fecha de este otorgamiento. No mencionamos los mismos porque son de conocimiento de las partes contratantes."

9. La Escritura de Segregación no hace referencia a servidumbre a favor de la AEE (antes AFF) para líneas eléctricas que afectare a la porción segregada, hoy finca #42,968.

10. El 11 de agosto de 1967, los Matrimonios Izquierdo y Ortiz Brunet, otorgaron una escritura de compraventa titulada en Inglés "Deed of Sale", ante el notario Eduardo E. Franklin, mediante la cual vendieron la finca #42,968 a Sinclair Caribbean Oil Company (la "Escritura de Sinclair").

11. En cuanto a cargas y gravámenes, la Escritura de Sinclair indica que: "The Property is absolutely free of all liens and encumbrances," y que "the Sellers represent and warrant that they have absolute fee simple (pleno dominio) title to the Property and that the same is absolutely free and clear of all defects, liens and encumbrances." Véase Exhibit 5, Escritura #121 de 11 de Agosto de 1967, pág.1154. Más aún, en cuanto a los términos y condiciones de la compraventa, la Escritura de Sinclair aclara que "c) The Buyer States and the Sellers acknowledge that it is only interested in acquiring the Property free of all liens and encumbrances or defects of title whatsoever, with the sole exception of those stated in this instrument."

12. Posterior a la Compraventa de Sinclair, el 26 de octubre de 1967, el Tribunal Superior de Puerto Rico, Sala de Expropiaciones, emitió una Resolución mediante la cual enmendó el Exhibit "A" en los casos E-66-383, y E-66-384 y ordenó que se abriera un caso nuevo con el número E-66-384-A para incluir una servidumbre denominada 19-1 ("Resolución de 1967").

13. Mediante la resolución de 1967, el Honorable Tribunal de Expropiaciones declaró, ordenó y decretó que:

"a. Se enmiende el Exhibit "A" de los casos E-66-383 y E-66-384 y se abra un caso nuevo con el número E-66-384-A, para que lean como sigue:

…

CASO NUMERO E-66-384-A

SERVIDUMBRE NUMERO 19-1 DEL PLANO:

RUSTICA: Radicada en el Barrio Martí González del término municipal de Carolina con una cabida de .0204 cuerda equivalentes a 801.80 metros cuadrados en lindes por el Norte, con terrenos de José Pila Isaac; por el Sur, con una quebrada que la separa de terrenos de Commonwealth Theaters of P.R. Inc. y por el Este y Oeste, con la finca afectada.
Se constituye sobre la finca número 1,263 inscrita al folio 232 del tomo 29 de Carolina.

PERSONAS O ENTIDADES CON INTERES:

1. Cobian´s Metropolitan Circuit Inc., a cuyo favor consta inscrita, en concepto de dueño."

14. La Resolución de 1967 abrió un nuevo caso con el número E-66-384-A, para incluir una servidumbre denominada 19-1, sobre la finca número 1,263, propiedad de Cobian´s Metropolitan Circuit.

15. La Resolución de 1967 menciona una servidumbre a favor de los Estados Unidos de América para la instalación de líneas telefónicas.

16. El 14 de noviembre de 1967 (tres meses después de la Escritura de Sinclair), el Sr. Rafael Rodríguez Guasp, Superintendente de Estudios e Investigaciones de la AFF, envió un Memorando al Lcdo. Félix Sojo Granado, Consultor Jurídico Auxiliar de la AFF, relacionado con el Caso E66-384 (el "Memo de 1967"), mediante el cual hace constar que: "[h]ace unos días, esta oficina fue notificada de que en el área ocupada por nuestra servidumbre se están efectuando labores de construcción relacionadas con la ubicación e instalación de una gasolinera de la Compañía Sinclair."

17. El Memo de 1967 recomendó que se hiciera "uso de los vehículos legales correspondientes para obligar a la compañía gasolinera a reubicar las estructuras y demás facilidades del sitio donde están siendo construidas a otro lugar fuera del área de nuestra servidumbre" y que la parcela expropiada estaba identificada como "lote 19-1, propiedad de Cobian[´s] Metropolitan Circuit, Inc…".

18. No existe en los expedientes y récords de TotalEnergies, ni se le ha provisto por parte de LUMA, evidencia alguna de que en los 56 años desde que la AFF advino en conocimiento de que se estaba construyendo la estación de gasolina, la AFF, la AEE, o LUMA hayan tomado acción afirmativa para reclamar la existencia de la alegada servidumbre de líneas eléctricas hasta que se recibió la comunicación por parte de LUMA del 29 de agosto de 2022.

19. No existe en los expedientes y récords de TotalEnergies, ni se le ha provisto por parte de LUMA, evidencia de que en los 56 años desde que la AFF advino en conocimiento de que se estaba construyendo la estación de gasolina, la AFF, la AEE, o LUMA hayan solicitado que se removieran las edificaciones

o estructuras que están invadiendo la alegada servidumbre hasta que llegó la comunicación por parte de LUMA del 29 de agosto de 2022.

20. Entre los dueños de la finca #42,968 posteriores a Sinclair (y anteriores a TotalEnergies), se encuentran: (i) Isla Petroleum Corporation, quien la adquirió por compra a Arco Caribbean, Inc. (antes Sinclair Caribbean Oil Company), mediante la escritura #42 otorgada el 3 de agosto de 1981, ante el notario Eduardo E. Franklin; (ii) John Fleming Limited S.E., quien la adquirió por compra a Isla Petroleum Corporation, mediante la escritura #6 otorgada el 30 de enero de 1990, ante el notario Emilio A. García Bello; y (iii) Sunshine Rentals Puerto Rico Inc., quien la adquirió mediante cesión que le hiciere Sunshine Partners S.E. (antes Idemitsy International Caribbean S.E., y a su vez, antes John Flemming Limited S.E.), mediante la escritura de cesión #15, otorgada ante el notario Alfredo Álvarez Ibáñez el 13 de abril de 2004.

21. La Escritura de Compraventa #39 mediante la cual TotalEnergies adquirió la finca #42,968, indica lo siguiente en cuanto a gravámenes: *"THIRD: The Property is completely free and clear of any and all charges, liens and encumbrances, except as stated below. (a) By its origin, to an easement in favor of the United States of America…"*

22. La Certificación de Propiedad Inmueble expedida por el Registro de la Propiedad, Carolina, Sección II, el 28 de septiembre de 2023, indica lo siguiente en cuanto a Cargas y Gravámenes: "Servidumbre: por su procedencia a favor

de Estados Unidos de América, según surge de la inscripción 3a."

23. Ni la Escritura de Compraventa #39, ni la Certificación de Propiedad Inmueble indican que la finca 42,968 esté afecta a una servidumbre a favor del ELA, la AEE, ni la AFF.

24. La Escritura de Sinclair no hace referencia a servidumbre a favor de la AEE (antes AFF) para líneas eléctricas que afectare la finca adquirida por Sinclair, hoy finca #42,968.

25. La Resolución de 1967 fue emitida posterior a la Escritura de Segregación y a la Escritura de Compraventa de Sinclair.

26. La Resolución de 1967 no menciona la finca segregada y vendida a favor de los Matrimonios Izquierdo y Ortiz Brunet y posteriormente a Sinclair, hoy finca #42,968.

27. En la escritura de cesión a favor de Sunshine Rentals Puerto Rico, Inc. (entidad que vende la finca 42,968 a Gasolinas de Puerto Rico Corporation, hoy día TotalEnergies), se indica en cuanto a cargas y gravámenes lo siguiente: "TERCERO: Por su procedencia está afecta a: Servidumbre a favor de los Estados Unidos de América."

28. El 12 de abril de 1966, el Estado Libre Asociado de Puerto Rico, en beneficio de la Autoridad de Fuentes Fluviales de Puerto Rico, presentó la Demanda E-66-384 y otros, Estado Libre Asociado de Puerto Rico v. Cobian's Metropolitan Circuit, Inc., sobre expropiación forzosa. Esta se presentó con el propósito de adquirir los derechos reales de servidumbre en varias fincas, para uso y beneficio de la Autoridad de Fuentes Fluviales de Puerto Rico.

29. En el caso E-66-384 y/o, para el 26 de octubre de 1967, el Honorable Tribunal emitió una Resolución mediante la cual

enmendó una Resolución previa, dictada el 12 de abril de 1966, a los fines de:

   a. Incluir la Servidumbre 19, 19-A y 19-1.

   b. Ordenarle al Registro de la Propiedad a que cancelara cualquier inscripción que hubiere hecho e insertar las servidumbres tal y como se describen en la Resolución.

   c. Declarar expropiados y establecidos a favor del Estado Libre Asociado de Puerto Rico, para uso y beneficio de la Autoridad de Fuentes Fluviales de Puerto Rico, los derechos reales y perpetuos de la finca 1,263, Tomo 29, Folio 232 de Carolina, específicamente sobre el siguiente predio de la finca:

      i. **RÚSTICA:** Radicada en el Barrio Martín González del término municipal de Carolina con una cabida de 0.204 cuerda equivalente a 801.80 metros cuadrados y en lindes: por el Norte con terrenos de José Pilar Isaac; por el Sur con una quebrada que la separa de terrenos de Commonwealth Theaters of PR, Inc; y por el Este y Oeste con la finca afectada.

      a. Se le concedió a Cobian's Metropolitan Circuit, Inc., quien figuraba como dueño registral de la finca, la suma de $2,003.70 por concepto de compensación por la constitución de la servidumbre.

30. El 31 de diciembre de 1966, el propietario de la finca 1,263, Cobian's Metropolitan Circuit, Inc. y/o, otorgó la Escritura Número 23 sobre Segregación, Compraventa, Hipoteca y Constitución de Servidumbre. A través de esta, segregaron la finca 1,263 en dos parcelas, las cuales, a su vez, enajenó y otorgó garantía hipotecaria.

31. Las parcelas producto de la mencionada segregación tienen las siguientes descripciones:

   b. **PARCELA A:** Parcela de mil cuatrocientos sesenta y nueve metros cuadrados con veinte centímetros de otro (1,469.20 M/C), equivalentes a tres mil setecientas treinta y ocho diez milésimas de cuerda (.3738 cdas.), con un frente de Norte a Sur de treinta y cinco metros (35.000) y un fondo en la colindancia con Pilar Isaac de treinta y siete metros con ochocientos cincuenta y dos milímetros (37.852) y en la colindancia con la finca principal de treinta y seis metros con cien milímetros (36.100) y en la colindancia Este, de cuarenta y seis metros con trescientos noventa y

seis milímetros (46.396), radicada en el barrio Hoyo Mulas del término municipal de Carolina, Puerto Rico, colindando por el Norte, con Pilar Isaac; por el Sur y Este con la finca principal de donde se segrega; y por el Oeste con la Parcela B que se describirá inmediatamente después de ésta.

c. **PARCELA B**: Parcela de trescientos noventa y siete metros cuadrados con veintisiete centímetros de otor (397.27 M/C), equivalentes a mil once diez milésimas de cuerda (.1011 cds.), con un frente de Norte a Sur, con la Carretera número Ochocientos Ochenta y Siete (887) de treinta y un metros con doscientos doce milímetros (31.212) y un fondo en la colindancia Norte de doce metros con quinientos ochenta y dos milímetros (12.582); en la colindancia Sur de doce metros (12.000); en el lado Este en la colindancia con la Parcela A de treinta y cinco metros (35.000), situada en el barrio Hoyo Mulas del término municipal de Carolina, Puerto Rico, colindando por el Norte, con Pilar Isaac; por el Sur y Este con la finca principal de donde se segrega; y por el Oeste, con la Parcela A anteriormente descrita.

32. El 14 de mayo de 1968 el Registrador de la Propiedad denegó la inscripción de la segregación de las dos (2) parcelas por caducidad.

33. No es hasta el 26 de agosto de 1969, que la Escritura 23 fue inscrita en el Registro de la Propiedad. La "Parcela A" de mil cuatrocientos sesenta y nueve metros cuadrados con veinte centímetros de otro (1,469.20 M/C), producto de la segregación, se inscribió como la finca 21,246 en el Tomo 273, Folio 60 en la Sección de Carolina del Registro de la Propiedad. La referida finca hoy día consta inscrita como la finca 42,968 de Carolina Sur, Sección Carolina II. El cambio en la enumeración de la finca respondió a un cambio de Sección / Demarcación en el Registro de la Propiedad.

34. Para el 14 de noviembre de 1967, posterior a la fecha en que se adquirió la servidumbre, se estaban efectuando labores de construcción para la instalación de una estación

de gasolina. Surge la estructura de un plano de mensura, del cual se desprende el signo aparente de la servidumbre. Lo anterior demuestra el uso continuo que se le está dando a la servidumbre desde el 1967 hasta el día de hoy.

35. El 21 de octubre de 2004, Gasolinas de Puerto Rico Corporation, hoy día Total Petroleum Puerto Rico, Corp., adquirió la finca 42,968 (t/c/p 21,246). Desde entonces, conforme al Registro de la Propiedad, la mencionada corporación es la dueña de la finca por donde discurre la servidumbre en cuestión. Al momento de la compraventa, la servidumbre de uso público inscrita a favor del Estado figuraba inscrita en el Registro de la Propiedad.

Luego de determinados estos hechos, el Tribunal de Primera Instancia en Carolina, el 24 de mayo de 2024 emitió Sentencia Sumaria a favor del demandante, aquí parte apelada. En esta se declaró en violación de la servidumbre a la parte apelante y se expidió el Injunction solicitado, ordenando el desalojo de las propiedades donde ubican los negocios de despacho y venta de combustible (Gasolinera Total) taller de mecánica y gomera (Prospero Tires 2) y que estos se abstengan de continuar operando dichos negocios establecidos en la propiedad por estar en invasión a la servidumbre de la AEE.

Inconforme, la parte apelante acudió ante nos en Recurso de Apelación con los siguientes señalamientos de error:

> Erró el TPI en su apreciación del orden de los hechos probados puesto que el caso de expropiación forzosa sobre la finca #1,263 comenzó 10 meses después de que Cobian's, segregó la porción que es hoy día la finca #42,968, por lo que esta última ya era una finca independiente y separada que no fue parte del proceso de expropiación ni sobre la cual se constituyó la servidumbre.

> Erró el TPI al determinar que la servidumbre que Luma alega fue constituida sobre la finca #42,968,

hoy día propiedad de TotalEnergies, es una servidumbre continua por signo aparente vis-a-vis una servidumbre non edificandi, y que no se extinguió por prescripción extintiva.

Erró el TPI al determinar que a TotalEnergies no le cobija la protección de tercero registral.

Erró el TPI al emitir una orden de injunction más amplia de lo solicitado por Luma, ordenando a TotalEnergies a desalojar un área y edificios, incluyendo un taller de mecánica, que están fuera del área de la servidumbre que reclama Luma, constituyendo así una expropiación total de la finca sin que haya mediado un procedimiento de expropiación ni el pago de justa compensación.

Con la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

El entredicho Provisional, *injunction* o interdicto es un recurso extraordinario discrecional, cuyos contornos se delimitan en los Artículos 675-695 del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA secs. 3521-3566 y por la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, Regla 57. Se define como un mandamiento judicial expedido por un tribunal, con el cual se requiere que una persona se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra. 32 LPRA sec. 3521. Nuestro ordenamiento jurídico reconoce tres (3) modalidades de *injunction*, éstos son: el *injunction* permanente, *injunction* preliminar y el entredicho provisional. Ver Regla 57 de Procedimiento Civil, *supra*.

La orden de entredicho provisional que emita un tribunal, que puede inclusive dictarse ex parte, al evaluar la Demanda luego de presentada, debe cumplir con los requisitos de las Reglas 57.1 y 57.4 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 57.4.

Éstos son: (1) ser preciso en cuanto a lo que se prohíbe o exige hacer; (2) detallar por qué el daño es inminente, inmediato e irreparable; (3) explicar por qué se emitió sin notificación previa; e (4) incluir la cuantía de la fianza que se le requirió al demandante para que pueda responder por daños y costas en caso de que se haya expedido indebidamente.

En términos generales, el interdicto está encaminado a prohibir u ordenar la ejecución de determinado acto, **con el fin de evitar que se causen perjuicios inminentes o daños irreparables** a alguna persona, en casos en los que no hay otro remedio adecuado en ley. *VDE Corporation v. F & R Contractors*, 180 DPR 21, 40 (2010). Para determinar si procede es necesario examinar si la acción que se pretende evitar o provocar, connota o no un agravio de patente intensidad al derecho del individuo que reclama una reparación urgente. Íd. Es decir, la parte promovente deberá demostrar que, de no concederse el remedio, sufrirá un daño irreparable. Íd. Un daño irreparable es aquél que no puede ser satisfecho adecuadamente mediante la utilización de los remedios legales disponibles. Íd; véase, además, *Pérez Vda. Muñiz v. Criado*, 151 DPR 355, 373 (2000). El propósito fundamental del *injunction* preliminar es el de mantener el *status quo* hasta que se celebre el juicio en sus méritos, por lo cual la orden de *injunction* preliminar, ya sea requiriendo un acto o prohibiéndolo, evita que la conducta del demandado produzca una situación que convierta en académica la sentencia que finalmente se dicte, o que se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. *Mun. Ponce v. Gobernador*, 136 DPR 776, 784 (1994).

Así pues, para expedir un *injunction* preliminar, se evalúa (a) la naturaleza del daño a que está expuesto la parte

peticionaria; (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley; (c) la probabilidad de que la parte promovente prevalezca; (d) la probabilidad de que la causa se torne en académica; (e) el impacto sobre el interés público del remedio que se solicita, y (f) **la diligencia y la buena fe con que ha obrado la parte peticionaria.** Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V. (Énfasis nuestro)

Por otra parte, el *injunction* permanente se produce por una sentencia final. Después del juicio en sus méritos y antes de ordenar un *injunction* permanente, el Tribunal debe tomar en consideración, nuevamente, la existencia o ausencia de algún otro remedio adecuado en ley. Los factores que se deben tomar en consideración para emitir el recurso de *injunction* permanente son: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público envuelto; y (4) el balance de equidades. *Aut. Tierras v. Moreno & Ruiz Dev.Corp.*, 174 DPR 409, 428 (2008). Procede conceder una petición de *injunction* permanente si la parte que lo solicita demuestra que no tiene ningún otro remedio en ley para evitar un daño. *Senado de PR v. ELA*, 203 DPR 62, 72 (2019).

**B.**

La servidumbre es un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a un dueño distinto. El inmueble a cuyo favor está constituida la servidumbre se llama predio dominante, mientras, el que la sufre se denomina predio sirviente. Artículo 465, Código Civil de Puerto Rico de 1930 (en

adelante CCPR 1930), 31 L.P.R.A. sec. 1631[1]. Las servidumbres pueden ser continuas o discontinuas, aparentes o no aparentes. Artículo 468, CCPR 1930, 31 L.P.R.A. sec. 1634. Continuas son aquellas cuyo uso es o puede ser incesante sin la intervención de ningún hecho del hombre. Discontinuas son las que se usan a intervalos más o menos largos y dependen de actos del hombre. Aparentes, las que se anuncian y están continuamente a la vista por signos exteriores que revelan el uso y aprovechamiento de estas. *Logia Caballeros del Sur v. Cordero*, 74 DPR 444, 448 (1953); Artículo 468, *supra*. Por otro lado, el Artículo 469, *CCPR 1930*, 31 L.P.R.A. sec. 1635, establece que **las servidumbres son además positivas o negativas**. Se le llama positiva a la servidumbre que impone al dueño del predio sirviente la obligación de dejar hacer alguna cosa o de hacerla por sí mismo, y **negativa la que prohíbe al dueño del predio sirviente hacer algo que le sería lícito sin la servidumbre**.

También tenemos las servidumbres en equidad, figura reconocida en nuestro ordenamiento desde el año 1913. En estas establecen condiciones restrictivas cuyo propósito es limitar las facultades dominicales de los futuros adquirientes. *Ramírez Kurtz v. Damiani Ramos, et al*. 2024 TSPR 97, 214 DPR __ (2024). Su característica principal es que limita el uso de la propiedad con el fin de "preservar la belleza, la comodidad y la seguridad del reparto residencial". *Park Tower, S.E. v. Registradora*, 194 DPR 244, 252 (2015); *Residentes Parkville v. Díaz*, 159 DPR 374, 382-3863 (2003); *Asoc. V. Villa Caparra v. Iglesia Católica,* 117 DPR

---

[1] El referido Código Civil de Puerto Rico de 1930, según enmendado, 31 LPRA ant. sec. 1 *et seq.,* fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, según enmendada, 31 LPRA sec. 5311 *et seq*. No obstante, para fines del presente caso, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia ante nuestra consideración.

346, 351 (1986); *Sands v. Extensión Sagrado Corazón Inc.*, 103 DPR 826, 828 (1975).

Para que las servidumbres en equidad sean válidas y tengan eficacia jurídica, como un derecho real oponible *erga omnes*, tienen que inscribirse en el Registro de la Propiedad, su título tiene que especificar que ellas forman parte de un plan general de mejoras y, además, las condiciones o restricciones que interpongan deberán tener un grado de razonabilidad. *Park Tower, S.E. v. Registradora*, 194 DPR, en las págs. 252-253; *Residentes Parkville v. Díaz*, 159 DPR, en las págs. 383-385; *Carrillo Norat v. Camejo*, 107 DPR 132, 136 (1978).

Las servidumbres en equidad pueden modificarse o extinguirse por determinadas circunstancias, entre ellas, "cuando cambios radicales del vecindario no solo hacen la restricción irrazonable y opresiva para el dueño del predio sirviente, sino también destruyen el valor que la restricción tenía para el dueño del predio dominante, por lo cual resulta en verdad imposible alcanzar los fines que perseguía la servidumbre". *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 DPR, en la pág. 354, citando a *Colón v. San Patricio Corporation,* 81 DPR 242, 262 (1959).

Sobre el modo de extinguirse estas, el Código Civil de 1930 en su Artículo 482, 31 L.P.R.A. sec 1681, establece que las servidumbres se extinguen:

(1) Por reunirse en una misma persona la propiedad del predio dominante y la del sirviente.

(2) Por el no uso durante veinte (20) años. Este término principiará a contarse desde el día en que hubiera dejado de usarse la servidumbre respecto a las discontinuas; y desde el día en que haya tenido lugar un acto contrario a la servidumbre respecto a las continuas.

(3) Cuando los predios vengan a tal estado que no pueda usarse de la servidumbre; pero ésta revivirá si después el estado de los predios permitiera usar de

ella, a no ser que cuando sea posible el uso haya transcurrido el tiempo suficiente para la prescripción, conforme a lo dispuesto en el número anterior.

(4) Por llegar el día o realizarse la condición, si la servidumbre fuere temporal o condicional.

(5) Por la renuncia del dueño del predio dominante.

(6) Por la redención convenida entre el dueño del predio dominante y del sirviente.

## C.

El procedimiento judicial de expropiación forzosa es uno de naturaleza civil *in rem* por lo que va dirigido contra la propiedad misma, y no contra las personas dueñas. Por esa razón la regla de justa compensación que se aplica normalmente, se limita a determinar el valor en el mercado de la propiedad sin consideración de otros intereses. *Adm. de Terrenos v. Nerashford Dev. Corp.*, 136 DPR 801, 807 (1994). En ese sentido el recurso de expropiación va dirigido contra la propiedad en sí y <u>no contra los intereses particulares que pueda tener un demandado sobre la propiedad</u>. *Olivero v. Autoridad de Carreteras*, 107 DPR 301, 306 (1978); *Pueblo v. 632 Metros Cuadrados de Terreno*, 74 DPR 961, 970 (1953).

De ordinario el Estado insta una acción de expropiación forzosa conforme al procedimiento establecido en la Ley de Expropiación Forzosa de 12 de marzo de 1903, según enmendada, 32 LPRA sec. 2901 *et seq.,* y la Regla 58 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 58. *A.A.A. v. Cortés, et al*., 2024 TSPR 96, 214 DPR ___ (2024); *Mun. de Guaynabo v. Adquisición M2*, 180 DPR 206, 217 (2010). Generalmente, junto a la demanda o acción de expropiación forzosa se presenta un legajo de expropiación que contiene una declaración de adquisición y entrega material de la propiedad. *Mun. de Guaynabo v. Adquisición M2*, supra, a la pág. 217.

**D.**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Cruz López y otros v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR ___ (2024) *Birriel Colón v. Econo y otros,* 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *González Meléndez v. Mun. San Juan et al*., 212 DPR 601, 610 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335, 350 (2023); *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Oriental Bank v. Caballero García,* supra, pág. 212; *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.,* supra*; Ramos*

*Pérez v. Univisión*, 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. Íd.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García,* supra; *Pérez Vargas v. Office Depot*, 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado*, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la

moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.* Es decir, el hecho de no oponerse a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión,* supra, pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, *supra*. Íd. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. Íd. De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita

la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. Íd., pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz López y otros v. Casa Bella y otros,* supra*; Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". Íd. No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros,* supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Cruz López y otros v. Casa Bella y otros,* supra; *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

*Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, *"nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". Cruz López y otros v. Casa Bella y otros,* supra*; Oriental Bank v. Caballero García,* supra, pág. 680; *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. *Íd.* De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Íd.*

### III.

**En primer lugar, al evaluar una sentencia dictada de forma sumaria podemos revisar de novo todo lo evaluado por el TPI. Estamos ante una servidumbre negativa de *non aedificandi* o no construir.** Vemos que aquí chocan entre sí, dos situaciones rodeadas de varias circunstancias que podrían crear una conclusión injusta por un lado o peligrosa por el otro. Cierto es que por más de 55 años no ha pasado nada con relación a tener una gasolinera debajo de este tendido eléctrico de alto voltaje,

pero eso no significa que no sea peligroso tener la gasolinera debajo de esas líneas de alto voltaje. Eso, además, explica por qué se tramitó la obtención de la servidumbre aquí en controversia.

Tenemos ante nosotros una servidumbre aparente, continua y negativa (así son las servidumbres *non aedificandi*). Es aparente por los rasgos exteriores a simple vista, es continua porque se mantiene en uso continuo e ininterrumpido. Ahora bien, se clasifica como, negativa porque impedía a los dueños de las fincas sirvientes ejecutar sobre esa porción de la finca gravado por la servidumbre, actos que, de no ser por la servidumbre, le serían lícitos.

No tenemos duda que era de conocimiento de la entonces Autoridad de las Fuentes Fluviales, que luego se le cambió el nombre a la Autoridad de Energía Eléctrica, que en el terreno de esa servidumbre negativa se estaban construyendo distintos comercios que luego fueron vendidos e inscritos en el registro sin la servidumbre inscrita y, ante ninguno de estos casos por los pasados más de 55 años, se hizo valer el derecho que en su momento tuviera por ser, además de negativa -según servidumbre finca matriz- aparente y continua. Renunciando de este modo a la característica de servidumbre negativa, pero reteniendo lo ya exteriorizado que es su derecho sobre el vuelo de esa servidumbre y las torres de soporte. En otras palabras, lo único que se podía deducir de la servidumbre aparente, era un derecho sobre el vuelo por donde pasa la servidumbre, pero, al tratarse de líneas eléctricas de alto voltaje, era razonable pensar que existía una condición negativa de no construir debajo de esas líneas eléctricas.

No se puede interpretar de que AEE renunció a la prohibición de que los dueños de las fincas sirvientes construyeran debajo del transcurrir de esas líneas. La servidumbre se constituyó como una de prohibición de construcción debajo de esas líneas. La realidad es que la peligrosidad de la ubicación de una estación de gasolina bajo los cables eléctricos de alto voltaje, siempre ha existido. No procede otra conclusión con estos hechos, que no sea que la servidumbre siempre existió desde 1966, fecha en que comenzó a litigarse la expropiación para gravar esas fincas con la servidumbre de no construcción.

LUMA administra las propiedades, los recursos y las herramientas de la Autoridad de Energía Eléctrica, lo cual incluye la servidumbre en controversia. De esta forma procede resolver que LUMA puede requerir, como hicieron, que se respete la servidumbre existente que aquí se ha litigado.

Ante ello, la servidumbre aparente, continua y negativa (así son las servidumbres *non aedificandi*) que evaluó y correctamente mantuvo vigente el TPI, requiere que confirmemos que la finca adquirida por TotalEnergies que aquí nos ocupa, estaba gravada por las servidumbres *non aedificandi,* que se creó *desde el caso de expropiación* en 1966. No obstante ello, aunque confirmamos que se mantiene vigente la servidumbre, entendemos que procede modificar la orden del TPI para limitarla a que la prohibición de construcción se limite al ancho de la servidumbre, lo cual no se precisó en la Sentencia. Ante ello, procede modificar también la Orden de Injunction Preliminar y Permanente a los efectos que las partes demandadas solo tienen que desalojar el área que está gravada por la servidumbre de no construir. Los peticionarios se tienen que abstener de continuar operando todo negocio que esté dentro del área que cubre la servidumbre, pues

está vigente la prohibición de toda construcción en el ancho y largo que dicha servidumbre no permite la construcción.

**IV.**

Por los fundamentos que anteceden se modifica la Sentencia y Orden de Injunction que emitió el Tribunal de Primera Instancia de Carolina, para que, manteniendo vigente la servidumbre, se indique que la prohibición de construcción se limita a lo que expresan los planos, que es el terreno que ocupa la servidumbre. Modificamos además la Orden de Injunction Preliminar y Permanente a los efectos que las partes demandadas solo tienen que desalojar el área que está dentro del área protegida por la servidumbre de no construir y se tienen que abstener de continuar operando todo negocio que esté dentro de dicha área que cubre la servidumbre. Así, se confirma que está vigente la prohibición de toda construcción en el ancho y largo que dicha servidumbre no permite la construcción en el predio.

Unimos a esta Sentencia copias de los planos y fotos que ilustran la servidumbre y donde no hay controversia entre las partes. Se tratan, estos documentos, de copias que reflejan la realidad que allí existe.







    Lo acordó y manda el Tribunal, y certifica la Secretaria del

Tribunal de Apelaciones.


                    Lcda. Lilia M. Oquendo Solís
                 Secretaria del Tribunal de Apelaciones